'44  639
72  134

## JOHN M. PRICE v. SAMUEL C. KING.

QUITCLAIM DEED *by Executor — No Title Passed to Grantee.* Where a person pays to an executor about one-fortieth of the value of a tract of land, and in consideration thereof procures from him a quitclaim deed for such land, although in fact and in law the executor as such had no power or authority to sell or convey the land, or to execute any kind of deed therefor, and no fraud, deception, concealment, mistake of facts, or accident occurred or intervened, and it was not the intention that any interest in the land except such as the executor as such had power to convey, should pass to the grantee by such deed, *held,* that no title or interest in or to the aforesaid land passed to the grantee by the deed, or by way of estoppel, ratification or otherwise, although the executor may at the time of the execution of the deed or afterward have had some interest in the property as heir or devisee.

### *Error from Atchison District Court.*

THIS was an action in the nature of ejectment, brought in the district court of Atchison county, on July 28, 1883, by John M. Price against Samuel C. King, to recover certain real estate hereafter described; the case was tried before the court without a jury, and the court made special findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of the defendant and against the plaintiff for all the property in controversy, except two lots; and the plaintiff, as plaintiff in error, brings the case to this court for review. The findings and conclusions of the court below, so far as it is necessary to give them, read as follows:

"1. On December 1, 1864, and until May 1, 1868, Charles

Gould, of New York city, was the full fee-simple owner of lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, in block 43, and lots 6, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19 and 20, in block 44, in L. C. Challiss's addition to the city of Atchison, Atchison county, Kansas, together with other property in said addition, by deed which was duly recorded in the office of the register of deeds of this county December 8, 1864.

"2. On May 1, 1868, said Charles Gould and Henrietta S. Gould his wife conveyed to Courtlandt Palmer, of New York city, an undivided one-half of said lots and other property by deed, which was duly recorded in the office of the register of deeds of this county, on June 15, 1868.

"3. On June 24, 1880, a deed was executed in which the parties were described as follows: 'Courtlandt Palmer, Charles P. Palmer, and Henry Draper,' executors of the estate of Courtlandt Palmer, deceased, and Henrietta S. Gould, executrix of the estate of Charles Gould, deceased, parties of the first part, and R. F. Smith, party of the second part.' The consideration named in the deed was $225, and for said sum, the receipt of which was acknowledged in said deed, it was stated that the parties of the first part did remise, release and quitclaim unto said party of the second part, his heirs and assigns forever, all of block 43, being lots 1 to 30 inclusive, all of block 44 east of lots 10 and 11, being lots 1 to 20 inclusive — which included the property in controversy — and also other property, all in Challiss's addition to the city of Atchison, Atchison county, Kansas. Said deed was without covenants or recitals as to ownership of any kind, and it did not purport to have been executed by the authority of any court, and it was signed as follows: 'Courtlandt Palmer, Exr., Charles P. Palmer, Exr., Henry Draper, Exr., Henrietta S. Gould, executrix.' Said deed was duly acknowledged, and on February 7, 1881, the same was duly recorded in the office of the register of deeds of this county.

"4. On June 25, 1881, said R. F. Smith and his wife executed and delivered to the plaintiff, John M. Price, a quitclaim deed for all the property described in said deed of June 24, 1880, and the same was duly recorded in the office of the register of deeds of this county on July 5, 1881.

"5. It further appears from the evidence introduced upon the trial in aid of the plaintiff's claim of title that, prior to the execution of said quitclaim deed of June 24, 1880, the said Charles Gould mentioned in conclusion of fact 1, and the

said Courtlandt Palmer referred to in conclusion of fact 2, had died, both testate. Said Charles Gould died prior to November 4, 1870, and his last will and testament was admitted to probate in the surrogate's court of the county of New York, in the state of New York, on November 22, 1870; by said will, Henrietta S. Gould, widow of Charles Gould, was made his sole devisee in case she survived him, and she did survive him, and the said Henrietta S. Gould was also made the sole executrix of said will. Said will did not contain any provision as to the sale of any real estate or other property by his executrix as such. An exemplified and duly authenticated transcript of the record of said will and the probate thereof was admitted to record by the probate court of this county on April 1, 1882, and duly recorded on page 99 of the proper record book. Said Courtlandt Palmer died prior to May 14, 1874, and his last will and testament was admitted to probate in the surrogate's court of the county of New York, in the state of New York, on June 2, 1874. By the terms of said will, after certain specified provisions not material in the consideration of this case, the residue of the estate of said Courtlandt Palmer, real and personal, was devised in four equal shares to Courtlandt Palmer, jr., Chas. Phelps Palmer, Mary Anna Draper, and the children of Richard S. Palmer, deceased; and said Courtlandt Palmer, jr., Charles Phelps Palmer, and Henry Draper, the husband of Mary Anna Palmer Draper, were named as executors of said will. All of said devisees were living at the time of the probate of said will; and at the time of the execution of said quitclaim deed of June 24, 1880, there being two children of the said Richard S. Palmer, deceased, they being minors, and Mrs. Fanny Arnot Haven, their mother, being their guardian. Said will did not contain any provision as to the sale of any real estate or other property by the executors as such. An exemplified and duly authenticated transcript of the record of said will and probate thereof was admitted to record by the probate court of this county on April 1, 1882, and duly recorded on page 103 of the proper record book. The said Courtlandt Palmer and Charles Phelps Palmer, who executed said quitclaim deed of June 24, 1880, were two of the devisees under said will, and the said Henry Draper, who joined in the execution of said deed, was the husband of another of the devisees under said will, and the said Henrietta S. Gould, who executed said quitclaim deed, was the sole devisee under the will of said Charles Gould, deceased.

41 — 44 KAS.

"6. It further appears from said evidence, that Charles W. Gould, son of said Henrietta S. Gould, a practicing attorney of New York City, entered into correspondence with Thomas M. Pierce, an attorney at law of the city of Atchison, Kansas, who had been the agent of the said Palmer and Gould estates as to the management of certain real estate in Atchison, regarding the proposed sale of the interests of said estates in blocks 29, 30, 43 and 44 in L. C. Challiss's addition, which had been previously sold at tax sale, and were involved for taxes, interest, penalty, and costs.' Said Henry Draper and said Courtlandt Palmer had conferred with said Charles W. Gould, and authorized him to act in the interest of said Palmer estate, and the said Henrietta S. Gould authorized him to act in the interest of said Gould estate.

"The question as to whether the devisees or executors were the proper persons to sell and convey any interest in said property which had been owned by said Charles Gould, deceased, does not appear to have been discussed or considered by any of the parties who executed said quitclaim deed of June 24, 1880, and in the said correspondence the property was referred to as belonging to the Gould and Palmer estates at the time of the transmission of said quitclaim deed of June 24, 1880, which transmission was on July 8, 1880, by said Charles W. Gould to said Thomas M. Pierce, for delivery to said R. F. Smith. Such exemplified and authenticated copies of said two wills, and of the probate of the same, were also transmitted. Said quitclaim deed was delivered by said Thomas M. Pierce to said R. F. Smith early in February, 1881, at which time the said R. F. Smith paid the said Thomas M. Pierce the sum of $225, which was soon afterward remitted by the said Thomas M. Pierce to said Charles W. Gould, and he paid the same to the executors of said Palmer estate and the executrix of said Gould estate. Shortly after the delivery of said quitclaim deed to said R. F. Smith, the question was raised as to the authority of said executors to sell and convey said real estate, and some correspondence followed; and on April 18, 1881, said Courtlandt Palmer, Charles Phelps Palmer and Henry Draper filed, in the office of the surrogate's court of said New York county and state of New York, a petition for the confirmation of said sale to R. F. Smith; and on May 23, 1881, said Charles W. Gould appeared in behalf of said petitioners in said court, and an order was thereupon made by said court purporting to sanction and confirm said sale."

The findings of fact, from the 7th to 14th, inclusive, have relation to the defendant's claim of title and to two lots not now in controversy, and need not be given.

"15. That, on June 24, 1880, and until the delivery of the deed, in February, 1881, the property described as in the said four blocks, in said deed of date June 24, 1880, was worth from $10,000 to $12,000, and the incumbrance thereon, by reason of the tax sales herein described, then amounted to about the sum of from $300 to $500."

CONCLUSIONS OF LAW.

"1. Said quitclaim deed, of date June 24, 1880, did not convey to said R. F. Smith (under whom the plaintiff claims) any property of the estate of Courtlandt Palmer, deceased, and Charles Gould, deceased, nor of the grantors as executors and executrix of said estates respectively, and the decree of said surrogate's court, of date May 23, 1881, was of no validity as a decree, and was inoperative as a confirmation of said conveyance.

"2. Said deed of June 24, 1880, and the receipt of the consideration from the said R. F. Smith by the executors of said estates, was insufficient to convey to the said R. F. Smith the title, legal or equitable, of the said Courtlandt Palmer, Charles Phelps Palmer, Mary Anna Palmer Draper, the two children of said Richard S. Palmer, deceased, and Henrietta S. Gould in said premises."

The third and fourth conclusions of law have reference to the defendant's title, and need not be given.

"5. The plaintiff is entitled to recover the possession of said lots Nos. 23 and 24, in block 43, as described in the petition herein, upon the payment to the defendant of the sum of $31.91, and interest thereon, according to law, from April 21, 1880, being the amount of taxes, penalties and costs paid by said defendant. The plaintiff is also entitled to judgment for his costs herein.

"6. That said defendant is entitled to judgment against plaintiff for all of the said described property other than lots 23 and 24, in block 43, L. C. Challiss's addition."

The aforesaid quitclaim deed, dated June 24, 1880, and delivered in February, 1881, reads as follows:

"This indenture, made this twenty-fourth day of June, in

the year one thousand eight hundred and eighty, between Courtlandt Palmer, Charles P. Palmer, Henry Draper, executors of the estate of Courtlandt Palmer, deceased, and Henrietta S. Gould, executrix of the estate of Charles Gould, deceased, parties of the first part, and R. F. Smith, party of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of $225, lawful money of the United States of America, to them in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have remised, released and quitclaimed, and by these presents do remise, release and quitclaim unto the said party of the second part, and to his heirs and assigns forever, all of block 29, being lots 1 to 26, inclusive; all of block 30, being lots 1 to 26, inclusive; all of block 43, being lots 1 to 30, inclusive; all of block 44, east of lots 10 and 11, being lots 1 to 20, inclusive, all of said property being in that part of the city of Atchison known as Challiss's addition to the city of Atchison, and in the county of Atchison and state of Kansas, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all of the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, that the said parties of the first part have in or to the above-described premises, and every part and parcel thereof, with the appurtenances, to have and to hold, all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

CourtlANDT D. Palmer, Exr.            [Seal.]
Chas. P. Palmer, Exr.                 [Seal.]
Henry Draper, Exr.                    [Seal.]
Henrietta S. Gould, Executrix.        [Seal.]

"Sealed and delivered in the presence of John J. Becker, witness as to the three executors; J. Thain Easton as to Henrietta S. Gould, executrix.

"State of New York, City of New York, County of New York, ss.: On the 24th day of June, in the year one thousand eight hundred and eighty, before me personally

came Courtlandt Palmer, Charles P. Palmer, and Henry Draper, known to me to be the executors of the last will and testament of Courtlandt Palmer, mentioned and described in the within conveyance, and they severally, each for himself, acknowledged before me that he executed the same as such executor as aforesaid.

[Seal.] JOHN J. BECKER, *Notary Public, 170*, N. Y. C.

"STATE OF NEW YORK, CITY AND COUNTY OF NEW YORK, *ss.:* On this 25th day of June, in the year one thousand eight hundred and eighty, before me personally came Henrietta S. Gould, known to me to be the executrix of the last will and testament of Charles Gould, deceased, mentioned and described in the within conveyance, and she acknowledged before me that she executed the same as such executrix as aforesaid.

[Seal.] J. THAIN EASTON, *Notary Public*, N. Y. C."

This deed was indorsed upon its back at the time of its execution, as follows: "Executors' deed—From Courtlandt Palmer, Charles P. Palmer, Henry Draper, and Henrietta S. Gould, executors. To R. F. Smith."

Judgment for the defendant *King*, at the June term, 1887. The plaintiff *Price* brings the case to this court.

*L. F. Bird*, and *H. M. Jackson*, for plaintiff in error.

*W. W. & W. F. Guthrie*, and *Henry Elliston*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought in the district court of Atchison county to recover certain real estate. The plaintiff, John M. Price, claims under a certain deed of conveyance, a quitclaim deed, executed to R. F. Smith by the three executors of Courtlandt Palmer's estate, to wit: Courtlandt Palmer, jr., Charles P. Palmer and Henry Draper, and by the sole executrix of Charles Gould's estate, to wit, Henrietta S. Gould, and a certain quitclaim deed from Smith and wife to himself, together with certain other facts and circumstances which he claims create in himself an estate in the property, either legal or equitable, or both. The

defendant, Samuel C. King, claims the property under certain tax deeds executed to him by the county clerk of Atchison county, and also by virtue of being in the actual possession and occupancy of the property. With respect to nearly all the property the judgment of the court below was in favor of the defendant and against the plaintiff, upon the ground, principally, that it was not shown, even *prima facie*, that the plaintiff ever had any title or estate, either legal or equitable, in or to the property.

The deed under which the plaintiff claims was evidently intended by all the parties thereto to be the deed only of the aforesaid executors and executrix, executed in the capacity only of executors and executrix, and not executed in any other capacity, or by any other person or persons. All the evidence upon the subject tends to show this. The deed was indorsed on its back, "executors' deed." It was executed in the name of the executors and executrix as such. It was signed by them as executors and executrix. It was witnessed by the subscribing witnesses to the same effect; and it was also acknowledged by the grantors only as executors and executrix; and as a matter of fact, according to all the extrinsic evidence upon the subject, the grantors intended to execute the deed only as executors and executrix, and afterward with the desire and wish of all the parties it was confirmed by the surrogate's court of the city and county of New York and state of New York as the deed of the executors and executrix; and afterward, at the instance of the plaintiff and Smith, authenticated copies of the wills under which the executors and executrix attempted to execute the deed and the proceedings of the said surrogate's court showing the probate of the wills, etc., were filed and recorded in the office of the probate court of Atchison county, Kansas—the county in which the land supposed to have been conveyed, including the land in controversy, is situated. And further, each of the parties executing the aforesaid deed was actually an executor or executrix, and all together they were all the executors and the only executrix of the Palmer and Gould estates; and one of such executors, Henry Draper, had

no possible interest in the property supposed to be conveyed, except as executor, and as the husband of one of the heirs and devisees; and the grantors mentioned in the deed included the names of only three of the heirs or devisees, and there were three of the heirs and devisees of the Palmer estate and the six heirs of the Gould estate who were not mentioned in the deed as grantors or otherwise.

If the foregoing deed shall be construed to be only the deed of the foregoing executors and executrix, then it must unquestionably be held to be absolutely null and void as a conveyance; and we think it must be so construed and so held. No one of the executors or the executrix *as such* had any title or estate in or to any part of the property. The wills under which they attempted to act did not give to them or to any one or more of them any title or estate in or to the property as executors or executrix. Nor did such wills confer upon them or upon any one or more of them, or upon anyone else, any power or authority to sell or convey the property or any part thereof, or to alienate the same in any manner whatever. Nor did any court ever attempt to give to them or to any person or persons any such power or authority; and there was always an abundance of personal property on hand belonging to each estate with which to meet all demands that might be presented against such estate. Hence, no fact existed authorizing any court to grant any such power or authority. The plaintiff, however, claims that even if the aforesaid deed is void as a conveyance, and even if for that reason the plaintiff has no *legal* title to the property in controversy, still that under all the facts of the case and in equity, he has the paramount *equitable* title thereto. Now in what does the plaintiff's equities or his equitable title consist? His title, so far as any writing is concerned, is founded solely upon a quitclaim deed to himself from Smith, the grantee of the aforesaid executors and executrix, and hence so far as his written title is concerned, he claims only under a quitclaim deed from a party, Smith, whose title was founded upon a void executors' and executrix's deed, which also was and is only a quitclaim deed;

and under a quitclaim deed the grantee therein cannot claim to be a *bona fide* purchaser or holder of the property or an equitable owner thereof, as against outstanding equities in other claimants of the property. (*Johnson v. Williams*, 37 Kas. 179.) Indeed, the grantee in a quitclaim deed gets nothing except what his grantor in fact owned at the time of the execution of the deed, which in the present case was nothing, as the executors and executrix, as such, owned nothing in the present case. And such a deed will not estop the maker thereof from afterward purchasing or acquiring an outstanding adverse title or interest in or to the property and holding it as against his grantee. (*Simpson v. Greeley*, 8 Kas. 586, 597, 598; *Bruce v. Luke*, 9 id. 201, 207, *et seq.*; *Scoffins v. Grandstaff*, 12 id. 469, 470; *Young v. Clippinger*, 14 id. 148, 150; *Ott v. Sprague*, 27 id. 624; *Johnson v. Williams*, 37 id. 180, 181.)

It is possible that there might be cases where a party claiming only under a quitclaim deed would have equities beyond the mere terms of his quitclaim deed, but we do not think that this case falls within any of such cases. It is possible where a party purchases real estate and pays a full consideration therefor and takes only a quitclaim deed as a conveyance, that his claim of title to the property should be treated at least with favor, but such is not this case. The real estate claimed by the plaintiff to have been conveyed in this present case was worth at the time of its supposed conveyance from $10,000 to $12,000, with an incumbrance on it for taxes amounting to from $300 to $500; and yet the plaintiff's grantor, Smith, paid only $225 for such real estate — less than one-fortieth of the actual value of the property; and the plaintiff, in fact as well as presumptively, knew all this. Also, where there is fraud on the part of the vendor or a mutual mistake of the parties or some accident intervening, it is possible that the holder of a quitclaim deed might obtain equities beyond the terms of his deed: for instance, where the deed is defective or does not fully express what the parties intended that it should express, equity might reform it or might con-

sider it as reformed so as to make it express or accomplish what both the parties intended that it should express and accomplish. But that is not this case. The deed in the present case is just what the parties intended that it should be, and if it were changed in its form or effect in any particular, it would be what the parties intended it should not be. It is true that Smith desired a different kind of deed, and at the instance of Smith two different deeds were sent to the agent of the grantors for execution, but they refused to execute the same, and would not execute any other or different kind of deed than the one which they did in fact execute, and the negotiations with reference to the matter were going on and pending between the parties for about eight months before any final agreement was reached; and after all the parties were well informed as to the facts, Smith finally agreed to take and knowingly did take the very deed which is now in controversy in this case and afterward paid the aforesaid $225 for the same. He took it knowing what it was, and that he could not obtain any other or different kind of deed. And the plaintiff knew the same. There was no fraud, no concealment, no misrepresentation, no deception on the part of the grantors or their agents, and no mistake with reference to the facts on the part of anyone. A quitclaim deed was executed by the grantors merely as executors and executrix, and all the parties knew it; and this quitclaim deed really conveyed nothing, leaving the entire title to the property in the heirs and devisees. By this deed Smith got nothing, and he conveyed nothing to the plaintiff by his quitclaim deed to the plaintiff. And the facts were not such as to create or vest such equities or equitable title in the plaintiff that he may now disturb the rights of the defendant, who holds and claims by a separate and independent title adverse to both the plaintiff and his grantors.

There are also cases where an agent or trustee attempts to bind his principal, but from some lack of authority or from irregularity he fails to do so, and in effect binds himself. But such is not this case. The executors and executrix in this case did not attempt to bind any person. They merely quit-

claimed any interest which they might have as executors and executrix in the property; and as before stated, no party was deceived or defrauded or mistaken as to the facts, but all were fully and completely cognizant of the same. Smith got all he purchased or paid for when he got his quitclaim deed. He did not purchase or pay for the individual rights of any person. Of course in the beginning there was some talk of conveying the title to the property, and Smith at all times desired that such should be the case, but the executors and executrix refused, and consented only to quitclaim as to any interest which they might possibly have in the property as executors and executrix. They did not agree to sell or convey any interest which they or others might have in the property in any other capacity; and in the capacity of executors and executrix they will probably never dispute the plaintiff's title. Indeed, all the parties will at all times admit that Smith got by his quitclaim deed and conveyed to the plaintiff by another quitclaim deed all interest which the executors and executrix ever possessed in the property, which in fact was nothing.

The defendant makes the claim that no title passed to Smith or to the plaintiff, for the further reason that neither the wills nor the probate thereof, nor any of the proceedings of the surrogate's court of the city and county of New York, were filed or recorded in the office of the probate court of Atchison county, Kansas — the county in which the land in controversy is situated — until long after the aforesaid deed from the executors and executrix to Smith and the deed from Smith to the plaintiff were executed, delivered, accepted, and recorded. The first of the foregoing deeds was executed in New York on June 24, 1880. It was transmitted to Kansas on July 8, 1880, but on account of disputes between the parties it was not accepted by Smith until about February 7, 1881, when it was accepted by him, paid for, and then recorded in the office of the register of deeds. It was confirmed in the surrogate's court of the city and county of New York on May 23, 1881. The deed from Smith to the

plaintiff was executed on June 25, 1881, and was recorded on July 5, 1881. The wills were never probated in Kansas, and no proceedings with reference thereto were ever had in Kansas until April 1, 1882, when authenticated copies of the wills and the records of the proceedings of the aforesaid surrogate's court were filed and recorded in the office of the probate court of Atchison county, Kansas. Now it is claimed by the defendant that no will can be effectual to pass title to real estate unless the same has been probated or recorded in Kansas according to the statutes of Kansas; and §§ 24 and 29 of the act relating to wills, and § 1 of chapter 102 of the laws of 1879 ( Gen. Stat. of 1889, ¶ 2932), are referred to as sustaining this claim. Said § 29 reads as follows:

"SEC. 29. No will shall be effectual to pass real or personal estate unless it shall have been duly admitted to probate, or recorded, as provided in this act."

Upon the foregoing facts and statutes referred to it is claimed by the defendant that no title had ever passed to anyone under the wills when the foregoing deeds were executed and delivered, and therefore that no title could have passed to Smith or to the plaintiff because of the wills or otherwise when the foregoing deeds were executed, for at that time neither the executors, nor the executrix, nor the devisees, nor anyone else who might claim title under the wills, had any such title under the same to pass to anyone; and that as both such deeds were merely quitclaim deeds, which could not operate to pass future acquired titles, no title could ever subsequently have passed under them — and the cases heretofore cited are referred to as authority for such claim. With reference to these claims of the defendant just mentioned we shall express no opinion, as we do not think it is necessary for the decision of this case.

We decide in this case, however, the following: The first quitclaim deed executed by the executors and executrix to Smith did not, of itself, and at the time it was executed, con-

Quitclaim deed by executor— no title passed to grantee.

vey to Smith any title or interest in or to the property described in the deed, for at that time the grantors, as executors and executrix, had no such title or interest to convey, nor any power or authority to convey any such title or interest; and nothing afterward passed under such deed or by virtue of its terms, for it was only a quitclaim deed; and such is and always has been the law with respect to quitclaim deeds. And nothing at any time passed by virtue of any of or all the facts and circumstances taking place prior to, contemporaneous with and subsequent to the execution of the deed, for no fraud, deception, concealment, mistake of facts or accident occurred or intervened, and it was not the intention of the parties that anything but the interest of the executors and executrix as such, or the interest which they might have had the power to convey, should pass. And we might further say, that a party can never obtain, by way of estoppel or ratification or otherwise, what it was never expected or intended that he should obtain.

Finding that the plaintiff's supposed legal title, founded upon the aforesaid quitclaim deeds, is void, and not finding any equities in favor of the plaintiff sufficient to create an equitable title, we think the judgment of the court below is correct. There are a few other questions presented in this case, but we do not think that they need comment. The plaintiff may pay the taxes due on the two lots adjudged to him at any time, and may then obtain the possession thereof.

The judgment of the court below will be affirmed.

All the Justices concurring.