THE SPRINGFIELD HOMESTEAD ASSOCIATION

*v.*

JOHN E. ROLL.

*Filed at Springfield March 30, 1891.*

1.  FRAUDULENT CONVEYANCE—*remedy inter partes.*  A conveyance of property to hinder, delay or defraud creditors, is binding on the parties thereto, and neither courts of law nor equity will aid the fraudulent grantor in recovering back the property or in enforcing the trust upon which the deed was made, but will leave the parties in the precise position in which they have placed themselves by their own fraudulent acts.

2.  SAME—*reconveyance to grantor—effect upon the rights of the parties—Statute of Frauds.*  While a fraudulent grantee is under no legal obligation to reconvey the property to his grantor, yet if he actually makes such a conveyance it will be binding on him, and, if the rights of no innocent third parties have intervened, the fraudulent grantor will become reinvested, both at law and in equity, with the title previously conveyed to his grantee.  Such reconveyance is not within the condemnation of the Statute of Frauds.

3. NOTICE—*by possession of land.* Open and notorious possession of land is notice to the world of the occupant's title thereto, under an unrecorded and lost deed.

4. In 1879 a father conveyed his lands to his son in fraud of his creditors. In August, 1880, the son reconveyed the lands to his father, but the deed of reconveyance was not recorded, and was lost or stolen from him. In 1886, the father being in the visible and notorious possession of part of the property, the son executed a mortgage on the premises, which was duly recorded : *Held,* that the father's possession was notice to the mortgagee of his title, and the mortgagee was not an innocent and *bona fide* incumbrancer as against the father, and such mortgage was set aside as a cloud on the father's title.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

The original bill in this case was brought by John E. Roll against Frank P. Roll, to establish the complainant's title to certain real estate, and to remove certain clouds from said title. The bill avers that, on the 5th day of April, 1875, Robert L. McGuire, as trustee, sold a part of said real estate, under and by virtue of a deed of trust, to Frank P. Roll, who was the complainant's son, the complainant furnishing the money with which the purchase was made, and that Frank P. Roll took a deed of the premises so sold to him in his own name, agreeing to convey the same to the complainant whenever he should so desire; that on the 29th day of January, 1879, the complainant was the equitable owner and in possession of the residue of said real estate described in the bill, the legal title thereto being in Harriet V. Roll, the complainant's wife; that on the day last named, the complainant and his said wife executed a conveyance of the real estate last mentioned to said Frank P. Roll, whereby the legal title thereto became vested in him, although the complainant was in equity the owner thereof; that about August 1, 1880, the said Frank P. Roll, then contemplating marriage which might complicate the complainant's rights in said property, at the request of the complainant, made, executed and acknowledged and

delivered to the complainant a warranty deed of all of said real estate; that said deed, after its execution, was lost by or stolen from the complainant without having been recorded; that for a long time prior to the conveyance of said property to Frank P. Roll, the complainant was and had been, and, with the exception of one lot since conveyed to William E. Shutt, still is in possession and occupancy of all of said real estate; that by reason of the loss of said deed and the complainant's failure to record it, the title to said real estate appears of record to be still in Frank P. Roll, and that the deed by which said property was conveyed to him constitutes a cloud upon the complainant's title; that since the loss of said deed the complainant has frequently requested said Frank P. Roll to remove said cloud by the execution of a quit-claim of said premises to the complainant, but that he has neglected and refused so to do.

Frank P. Roll answered admitting the conveyance of said property to him, but denying that he purchased a part of said property of McGuire for the complainant, or that the complainant furnished the funds to make such purchase, or that he ever agreed to convey said property to the complainant. He alleges that, about January 29, 1879, the complainant and wife being in failing circumstances and unable to hold said property, for a valuable consideration, and in consideration of love and affection, and of an agreement on the defendant's part to permit them to use and control the property thereby conveyed during their natural lives, executed the deed from them to him mentioned in the bill, the title to the property thus conveyed being at the time in Harriet V. Roll, the complainant's wife and the defendant's mother. The answer denies that the defendant, about August 1, 1880, or at any other time, made, executed, acknowledged and delivered to the complainant a warranty deed or any other kind of deed of said real estate or any part thereof, and denies that the complainant ever had such deed. It admits that for some time the com-

plainant has been in possession of said real estate, not as owner, but under the agreement made by the defendant at the time of the conveyance to him, but denies that the conveyance to the complainant, or the record thereof, is in any manner a cloud upon the complainant's title, or that the complainant, or any one for him, at any time, requested the defendant to remove such cloud or execute a deed of said real estate to the complainant.

Subsequently the bill was amended by making the Springfield Homestead Association a party defendant, and alleging that said association had a claim by mortgage or otherwise, upon a part of said real estate, but that such claim was acquired from Frank P. Roll, with full knowledge of the rights of the complainant and subject thereto.

Said association answered admitting that it had a claim upon a portion of the property described in the bill, to-wit, lots 1 and 2 in block 2 in Ulrich's Addition to Springfield; also lot 1 in block 2, lot 1 in block 3, lot 1 and the north ten feet of lot 2 in block 4, all in Roll's second addition to Springfield; that on the 3d day of May, 1886, said Frank P. Roll, having the legal title of record to said lots, his wife joining with him, executed, and on the 5th day of June, 1886, delivered to said association a mortgage on said lots to secure his promissory note for $2200, dated May 3, 1886, said mortgage being recorded June 9, 1886; that on the 16th day of May, 1889, said Frank P. Roll being in default in the payment of said mortgage and note, a decree of foreclosure was entered in the Circuit Court of Sangamon county, and that in pursuance of said decree said lots were sold to said association for $1900, and that the master executed and delivered to said association a certificate of purchase therefor, which is still held by said association, said lots not being redeemed from said sale. Said answer denies the execution by Frank P. Roll to the complainant of any deed conveying said real estate to him, or that said association had any notice of any claim by

the complainant to said property at the time of the delivery, to it of said mortgage.

Said answer sets up laches on the part of the complainant in not sooner asserting his claim to said property. It further alleges that the complainant, being the owner of said real estate, on the 4th day of April, 1869, being financially involved, conveyed said property to one Riggin without any valuable consideration, for the purpose of hindering and delaying his creditors, and that in pursuance of such fraudulent design, the complainant, on October 1, 1872, procured a deed of said property from Riggin to the complainant's wife, Harriet V. Roll, and that said Harriet V. Roll, and the complainant as her husband, in furtherance of said fraudulent scheme, to protect said property from his creditors, executed and delivered to Frank P. Roll the deed of January 29, 1879, mentioned in the bill.

The cause was heard on pleadings and proofs and the court by its decree, found that, on the 21st day of August, 1880, Frank P. Roll was the owner in fee of the lands and premises described in the bill, and that on that day he conveyed to the complainant, by his certain deed, the several lots described in the answer of the Springfield Homestead Association, but that said deed was never recorded; that Frank P. Roll and wife, on the 3d day of May, 1886, mortgaged all of said lots to said association, to secure a sum of money due said association, and the said mortgage was recorded; that said association had no notice of the rights or claims of the complainant to lots 1 and 2, block 2, in Ulrich's addition to Springfield, at the time it took said mortgage, and that for want of such notice said mortgage is a valid and first lien thereon, but that the complainant has a right to redeem said lots from said mortgage; that as to the remaining lots covered by said mortgage, said John E. Roll, before and at the time of the execution and delivery of said mortgage by Frank P. Roll to said association, was in open and notorious possession thereof, and

14—137 ILL.

that such possession was notice to said association of the complainant's rights, and that, so far as those lots are concerned, said mortgage is, as to him, void and a cloud upon his title which ought to be removed, and the same was ordered to be cancelled, set aside and made void, as against the rights of the complainant as to said last above mentioned lots.

From that decree said association has appealed to this court and assigned errors.

Messrs. PATTON & HAMILTON, for the appellant:

To maintain the decree in this case the evidence should be clear and satisfactory. There should be no reasonable doubt that such deed, as is insisted upon, was in fact executed. *McVey* v. *McQuality*, 97 Ill. 93; *Oliver* v. *Oliver*, 110 id. 119; 119 id. 532.

The bill does not, in terms, allege that Frank P. Roll held the title to the real estate in trust for appellee, but that is, in effect, its meaning. In such cases the rule is the same as we contend for here. The proof must be of the clearest character. *Irwin* v. *Dyke*, 109 Ill. 528; *Green* v. *Dietrich*, 114 id. 636; *Lantry* v. *Lantry*, 51 id. 458; *Sturman* v. *Streamer*, 70 id. 188.

This being a bill to establish the alleged existence of a deed subsequently lost, the evidence should be of the most convincing character that such deed was in fact executed and delivered. *Loftin* v. *Loftin*, 96 N. C. 94; *Railroad Co.* v. *Devin*, 71 Iowa, 333.

When one voluntarily and without consideration puts his property out of his hands, being at the time largely in debt, the act is fraudulent, and a fraudulent intent will be presumed. *Moritz* v. *Hoffman*, 35 Ill. 553; *Morrill* v. *Kilner*, 113 id. 318; *Hulse* v. *Mershon*, 125 id. 52; *Power* v. *Alston*, 93 id. 587; *Bell* v. *Devore*, 96 id. 217; *Lowentrout* v. *Campbell*, 130 id. 503.

When a transaction is tainted with fraud, as between the parties to it a court of equity will not interfere, but will leave them in the position in which they placed themselves. *Miller*

v. *Marckle*, 21 Ill. 152; *Phelps* v. *Curts*, 80 id. 109; *Dunaway* v. *Robertson*, 95 id. 419; *Tyler* v. *Tyler*, 126 id. 525; Kerr on Fraud and Mistake, 374; Bump on Fraud. Con. 445, 446.

If the grantee convey or incumber the property, it will be good so far as the fraudulent grantor is concerned. Bump on Fraud. Con. 451; *Lyon* v. *Robbins*, 46 Ill. 276; *Dunaway* v. *Robertson*, 95 id. 419; *Finley* v. *McConnell*, 60 id. 259.

We insist, however, that if it be presumed that Frank did make a deed to appellee, it was a mere voluntary conveyance, without consideration, and a court of equity should refuse its aid to decree any relief by virtue of it. *Webb* v. *Insurance Co.* 5 Gilm. 223; *Preston* v. *Williams*, 81 Ill. 176.

Messrs. Palmer & Shutt, for the appellee:

The first point of contention is one of fact, purely. It has often been said by this court, in considering the verdicts of juries on trials of issues of fact, that where the evidence is conflicting the court will not set aside the verdict of the jury. *Martin* v. *Ehrenfels*, 24 Ill. 187.

Where the evidence is conflicting, the verdict, unless manifestly against the evidence, will not be disturbed. *Jacquin* v. *Davidson*, 49 Ill. 82; *Bowen* v. *Dutton*, 27 id. 515.

Possession of land is notice to a purchaser thereof of the tenure of a person in possession, and of the interest which he claims in the premises. *Williams* v. *Brown*, 14 Ill. 200.

The possession of land by a party is notice to all persons of whatever title or equities he may have, whether of record or not. *Cowen* v. *Loomis*, 91 Ill. 132.

The actual possession of land by a tenant is constructive notice of the equities of the landlord in the same, especially when it is notorious, and the tenant is paying rent to the landlord. *Smith* v. *Heirs of Jackson*, 76 Ill. 254; *Doolittle* v. *Cook*, 75 id. 354; *Whitaker* v. *Miller*, 83 id. 381.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

It is contended that the conveyances by which the title to the property in question became vested in the complainant's son, were made with intent to hinder, delay and defraud the complainant's creditors, and that the complainant, therefore, is entitled to no relief as against his fraudulent grantee, or as against the Springfield Homestead Association, which claims said property as mortgagee of said grantee. There is evidence tending to sustain the charges of fraud made by the answers, and if the bill had been brought to compel an execution by the alleged fraudulent grantee of the secret trust alleged to have been reposed in him by said conveyances, the contention here made would have been entitled to grave consideration. Where a conveyance of property is made in fraud of the creditors of the grantor, such conveyance is binding as between the parties to it, and neither courts of law or equity will aid the fraudulent grantor in recovering back the property conveyed, or in enforcing the trust upon which the conveyance was made. The courts will leave the parties to the fraudulent transaction precisely where they have placed themselves by their own fraudulent acts, and will give aid or assistance to neither.

But that is not this case. Here, as the complainant contends, his grantee, whether fraudulent or otherwise, has actually and voluntarily made a reconveyance to him of said property, and the scope of the bill is to have the rights to which the complainant has become entitled by means of such reconveyance ascertained and declared. While a fraudulent grantee is under no legal obligation to reconvey, he is under a moral obligation to do so, and where, in fulfillment of his moral obligation, he actually makes a reconveyance, such act will be valid and binding on him, and if the rights of no innocent third parties have intervened, the fraudulent grantor will become reinvested, both at law and in equity, with the title

previously conveyed to his grantee. Such reconveyance is not within the condemnation of the Statute of Frauds, but vests in him to whom it is made a title which the courts will recognize and protect precisely as they would a title derived from any other source.

The bill alleges that, about August 1, 1880, the complainant's son to whom said property had been conveyed, at the complainant's request, made, executed, acknowledged and delivered to the complainant a deed of said property; that said deed had not been recorded, and that it had been lost by or stolen from the complainant, and the prayer of the bill is, that a decree be entered establishing the complainant's legal title to said property. The answers of both defendants deny that such deed was executed as alleged, or that any such deed ever existed, and the real controversy in the case arises upon the issue of fact thus presented. By the decree of the court below that issue was determined in favor of the complainant, and the question now is whether that decree is sustained by the evidence.

The evidence as to whether said deed was executed as alleged is conflicting, and is not perhaps in all respects as clear and satisfactory as could be desired, but after giving it careful consideration, we are not prepared to say that it is not sufficient to warrant the finding of the court below. John E. Roll, the complainant, testifies positively that about the 28th or 30th of July, 1880, Frank P. Roll, his son, executed and delivered to him a deed of said property; that the signature to the deed was in his son's handwriting; that according to his best recollection the deed was acknowledged before Charles Arnold, a notary public, but as to that he is not positive; that his son handed him said deed after it was executed, and that he placed it in a bureau drawer in his room in the house where he lived, and that he saw it many times afterward in that place of deposit; that he first missed it about July or August, 1883; that his son, who was married shortly after

the execution of said deed, and also his wife, lived in the same house with the complainant for several years, and had complete access to said room and bureau drawer, and that after said deed was found to be missing, the complainant charged them with having taken it away, but they denied, or at least refused to admit, having done so.

Charles Arnold testifies that he was a notary public in 1880, and that he remembers Frank P. Roll's coming to his office that year to get an acknowledgment taken, and that while he does not remember whether he actually took said acknowledgment, he thinks he did. He admits, however, that he did not examine the deed nor see its contents nor what land it related to, and his recollection of the transaction seems to be quite indistinct.

William E. Shutt testifies that, about 1884 or 1885 he purchased, as the result of a somewhat protracted negotiation with John E. Roll, a small lot which formed a part of the property claimed to have been conveyed by Frank P. Roll to John E. Roll by the deed the existence of which is now in controversy, the price agreed upon being $350; that after agreeing upon the terms of the purchase, he examined the title of said lot as the same appeared of record, and found it to be in Frank P. Roll; that he then went to Frank P. Roll and told him that the title of a piece of property which he had bought of his father was in him, and that as soon as said title was made good, the purchase money was ready; that Frank P. Roll then told the witness that he had nothing to do with said lot; that the property belonged to his father; that he had made to his father a deed for it, which his father said was not on record; that thereupon, at the suggestion of the witness, John E. Roll and Frank P. Roll and wife joined in the conveyance of said lot to the witness, and that the witness paid for it with his check payable to the order of John E. Roll.

The testimony of these witnesses is met by Frank P. Roll with a simple denial. He swears that he never made a deed

of the property in question to his father or to any one else; that Charles Arnold never took an acknowledgment of a deed from him to his father; that he sold said lot to Shutt, although he admits that the bargain was made with Shutt by his father; that he received the consideration, although he admits that it was paid by a check, and that he can not remember who drew the money from the bank or where it went to, and as to the admissions to Shutt in relation to an unrecorded deed to his father testified to by that witness, he merely says that he does not remember them.

The testimony of Frank P. Roll stands uncorroborated, and besides, the judge of the court below saw the witnesses and had an opportunity of hearing them testify, and therefore had a better opportunity for judging of their relative credibility than we can have. In view of all the facts, we are of the opinion that the said court was justified in holding that the clear preponderance of the evidence was in favor of the complainant and decreeing accordingly.

The evidence clearly shows that at and before the time of the execution of the mortgage to the Springfield Homestead Association, the complainant was in visible and notorious possession of that part of the property in question in respect to which the decree is in favor of the complainant. Such possession charged said association with notice of the complainant's title, and the court therefore properly held that, as to that property, the mortgage was void as against the complainant.

The decree being supported by the evidence will be affirmed.

*Decree affirmed.*