## CARTLEDGE *v.* McCOY.

Where the grantee of land to whom the same had been conveyed
for the purpose of defrauding the grantor's creditors, subse-
quently, in pursuance of their original understanding, recon-
veyed to the grantor, who had in the meantime retained
possession, and the former thereafter instituted against the
latter an equitable proceeding based upon the theory that the
second conveyance was founded upon a valuable considera-
tion, it was competent for the defendant to plead and prove
the facts of the transaction, for the purpose of showing for
what reason and upon what consideration the reconveyance
was really made.

June 12, 1896. By two Justices. Argued at the last term.

Equitable petition.    Before Judge Butt.    Muscogee
superior court.    November term, 1894.

The petition of Sarah M. McCoy alleged:  On March
29, 1892, she owned an undivided interest in certain land
(described), which was conveyed to her by her father, J. A.
Cartledge, on December 4, 1883.    He desired to purchase
her interest in the land, and she agreed to sell it to him for
$2,500, $500 cash and $500 yearly on March 29, 1893,
March 29, 1894, March 29, 1895, and March 29, 1896, and
she was to make him a deed to the land, and he was to make
her notes for the deferred payments and to secure the same
by a mortgage to her upon the land.    In pursuance of this
contract, on March 29, 1892, she made him a deed to the
land, and he made and delivered to her his promissory notes,
but failed and refused to make her the mortgage.    She did
not read the notes at the time, believing that he had written
them correctly, but upon examination she ascertained that
they were not written correctly, and the interest of seven
per cent. per annum from date of the notes, which he
had agreed to pay, was left out of them.    His procuring
the deed, failing to have the notes speak the truth of
the transaction, and refusal to make to her the mortgage,
was a fraud upon her.    She prayed, that the contract

be reformed, and the interest be inserted in the notes; that he be decreed to execute to her the mortgage, or that the contract be cancelled, and she be decreed to pay him the $500 and surrender his notes, and he be decreed to cancel and surrender her deed. Attached to the petition was a copy of a deed dated December 4, 1883, from which it appears that the defendant conveyed the land, certain live stock, furniture and other personalty to J. J. Cartledge in trust for Mary J. Cartledge, wife of the grantor, during her life, and after her death to Sarah M. and Samuel Cartledge; and if either of the latter should die unmarried leaving no children, then his or her share to go to and be divided with the survivor and their brothers, J. J. and William Cartledge; and should Sarah M. Cartledge marry and die without leaving a child, her share to become the property of her said brothers. The grantor reserved a support and home "and of the annual rents and profits of the said real and personal estate" for his life, with power to his said wife to empower J. J. Cartledge in writing to sell any part or the whole of the trust estate and reinvest the proceeds in other property, subject to the above described trusts, etc.

Defendant answered: It is not true that petitioner was ever the owner of the land, but defendant was and still is the owner. He admits that he made the deed, but says that the same was merely voluntary, was without any consideration, and was made to hinder and delay his creditors, in order to enable him to compromise with his then creditors, all of which petitioner well knew at the time, and the deed was so understood by all of his children as well as petitioner. It is true that petitioner reconveyed the land to him and that he made the notes to her, but he denies that there is any mistake therein, but as he had advanced to some of his children $2,000, he was disposed to give petitioner the same amount. When she made the deed to him he gave her his notes for $2,500, the last note being given to cover all interest. There was no agreement or under-

36

standing that he should pay interest on the notes.    He practiced no fraud on her to make to him the deed, but it was made by her freely and voluntarily, she well knowing that the deed made by him was a mere voluntary deed and made to hinder and delay his creditors as above stated, and to enable him to make a compromise of his debts, and was to have no other effect.    He had always kept possession of the land.    He paid the first note of $500 to her, and stated at the time to her that if she were not satisfied she could return the $500 and he would deliver her back her deed. She expressed herself as well satisfied, saying she would rather have the $500 than the land, to say nothing about the balance of $2,000.    He never agreed to give her the mortgage.

Petitioner demurred to so much of the answer as set up that the deed was voluntary and made to hinder and delay defendant's creditors, upon the ground that defendant was estopped from seeking to avoid the promissory notes on the ground that they were without consideration in that they were given by him to plaintiff to avoid the payment of his creditors; and because defendant was estopped from taking advantage of his own wrong.    The demurrer was sustained, and defendant excepted.

*Blandford & Grimes*, for plaintiff in error.
*C. J. Thornton*, contra.

LUMPKIN, Justice.

It is well settled that the maker of a fraudulent deed, executed for the purpose of delaying or defrauding his creditors, is bound thereby, and cannot set up his own fraud in avoidance of the same.    *Parrott* v. *Baker*, 82 *Ga.* 364, and cases cited.    On page 373, Chief Justice Bleckley says: "A deed, signed, sealed and delivered, and expressing a valuable consideration upon its face, imports a legal consideration; and the maker is estopped from alleging or proving the contrary to defeat the deed as title, if to do so involves

setting up his own turpitude, and convicting himself of a deliberate intent to defraud his creditors." It is quite a different matter, however, when a grantee in such a deed, in pursance of the original understanding between himself and the grantor, voluntarily reconveys to the latter, he having in the meantime retained possession of the premises. Though such a fraudulent deed is binding as between the parties thereto, it is also true that, as between them, a reconveyance is perfectly proper. Indeed, it is the initial step in undoing the wrong already perpetrated, and the effect is, so far as the question of title is concerned, to restore the parties to their original status. When, therefore, the vendee in such a conveyance, in pursuance of the moral obligation so to do, does reconvey to the grantor— thus again uniting in him both possession and the evidence of ownership— it is the right of the latter, in defense to an equitable petition instituted against him by the grantee and based upon the theory that the deed of reconveyance was founded upon a valuable consideration, to show the real facts of the transaction. In so doing, the defendant in such case neither invokes nor relies upon the fact that his own deed was founded in turpitude. He simply shows that the plaintiff's deed to him is not a conveyance for value, and why it is not so.

We have simply undertaken to state the law governing the present case, without expressing any opinion as to the facts, concerning which the parties appear to be greatly at variance.

The court erred in sustaining the plaintiff's demurrer to so much of the defendant's answer as undertook to set up the facts in relation to the nature and purpose of the deed originally executed by the defendant, the effect of such ruling being to cut the defendant off from his main ground of defense. Let the case be heard upon its merits in the light of what is said in this opinion.

*Judgment reversed.*