ELIZABETH KNIGHT *et al.* v. WILLIAM DALTON.

No. 14,107.     (83 Pac. 124.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Duplicity—Cured by Answer and Proof.* The objection that the petition of plaintiff contained two causes of action which were not separately stated and numbered, one being to reform a deed, became immaterial when the defendant in his pleading and proof showed that the mistake in that deed had been cured by the making and delivery of a subsequent deed.

2. FRAUD—*Conveyance to Volunteer—Grantee Not Allowed to Question Grantor's Motive.* A party to whom land was conveyed without negotiation or consideration, and who afterward conveyed it back to the original grantor, is not in a position to question the motive of such grantor in making the original conveyance.

3. CONVEYANCES — *Quitclaim Deed — Estate Conveyed.* Ordinarily a quitclaim deed passes only a present, existing interest, and the grantee gets nothing except what his grantor in fact owned at the time of the execution of the deed.

4. ———— *Assignment of Possibility of Inheritance.* While the possibility of inheritance may under certain circumstances be assigned, it is *held,* that the instrument in question was not intended as a transfer of such contingent interest and was not effective for that purpose.

Knight v. Dalton.

Error from Ellis district court; JAMES H. REEDER, judge. Opinion filed November 11, 1905. Affirmed.

*David Rathbone,* for plaintiffs in error.

*W. E. Saum,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: William Dalton instituted this suit against Elizabeth Knight and Richard L. Knight to reform a deed purporting to convey real estate, which they had executed to Susan Dalton, and to quiet the title of William Dalton to the real estate as against the claims made by Elizabeth Knight. On September 18, 1891, Susan Dalton, the wife of William Dalton, owned a quarter-section of land and two city lots, and on that day she and her husband joined in a conveyance of the property to her sister, Elizabeth Knight. Although there was an expressed consideration of $2000 in the deed, no consideration was in fact paid. It appears that about that time Susan Dalton had been sued on a large surety debt, and it is said that the transfer was an effort to place the property beyond danger of an adverse judgment in that litigation. There was no change of possession of the land, nor did Elizabeth Knight assert ownership under the deed during the lifetime of Susan Dalton.

On January 28, 1897, Elizabeth Knight and her husband undertook to reconvey the land to Susan Dalton, but in the deed the quarter-section of land was inadvertently described as a part of section 32 instead of section 24. The mistake in the description was not discovered until 1899, and in the meantime Susan Dalton had become insane. On June 24, 1899, at the instance of the guardian of Susan Dalton, Elizabeth Knight and her husband executed another deed, purporting to convey the same land to Susan Dalton, which correctly described the land, and was intended to cure the error of description in the first conveyance.

Knight v. Dalton.

On July 6, 1899, William Dalton contracted with Elizabeth Knight to care for his insane wife at the stipulated charge of thirty dollars per month. At the same time he made an instrument, which was in form a quitclaim deed of the property in question, to Elizabeth Knight. It recited, among other things, that the property was owned by Susan Dalton, and the contract which had been made for her care; and it released and quitclaimed his interest and title to the land, subject to a life-estate in him. On September 7, 1899, Susan Dalton died without issue and intestate, leaving her husband as her sole heir at law. Elizabeth Knight was fully paid for the care of Mrs. Dalton out of the personal estate, but through the instruments mentioned she claimed that the title to the land was in her, subject only to a life-estate in William Dalton. He contended that there had never been an actual transfer of title to Elizabeth Knight; that his wife was the absolute owner of the property at the time of her death; that the so-called quitclaim deed was intended as a mere security for the payment of the care which Elizabeth Knight was to take of his insane wife, and that she had been fully paid for her services in that respect. He asked that the deed of Elizabeth Knight and her husband of January 28, 1897, in which there was a misdescription of the number of the section in which the land was situated, be reformed and his title quieted.

The trial court, in effect, held that reformation of the deed was unnecessary, as the subsequent deed voluntarily made by the same parties cured the error in description, and also that the quitclaim deed of July 6, 1899, was not effectual to convey any title or interest in the property and was no more than a mortgage intended to secure Elizabeth Knight for the care of Susan Dalton.

There is complaint that the petition included two causes of action in a single count, and that the motion of the defendants separately to state and number should have been allowed. It is claimed that there

was a cause of action to reform one deed, and a cáuse of action to quiet the plaintiff's title as against another. If we assume that more than one cause of action was stated, the objection appears to be wholly immaterial. It was conceded in the answer and otherwise that a subsequent deed of Elizabeth Knight had been made and delivered which correctly described the property and cured the error. If a correction of the first deed from Elizabeth Knight was necessary, it was accomplished by the later deed, and the matter of reformation was not, therefore, a contested matter.

There is a contention that the original deed of Susan Dalton was made to defraud creditors, and that neither she nor her heir should be allowed to question the validity of that conveyance. There might be force in the claim if Dalton were seeking to set aside the conveyance, but the Knights having voluntarily reconveyed the land and placed the legal title in Susan Dalton, nothing remained in them and they are not in a position to question the motive of Susan Dalton in making the transfer.

It appears that Mrs. Knight in her claim of title chiefly relies upon the quitclaim deed executed by William Dalton. At that time the absolute title was in Susan Dalton. He had no share in the ownership of the land, and, as the trial court rightly held, had nothing to convey. He had no interest whatever, except the possibility that he might outlive his wife and inherit from her in case the property had not been transferred. As he had no estate or vested interest in the land, his mere quitclaim, if it had been so intended, would not have affected the title nor have carried to the grantee any estate or title which the grantor might subsequently acquire. (*Simpson v. Greeley,* 8 Kan. 586; *Bruce v. Luke,* 9 Kan. 201, 12 Am. Rep. 491; *Ott v. Sprague,* 27 Kan. 623; *Johnson v. Williams,* 37 Kan. 179, 14 Pac. 537, 1 Am. St. Rep. 243; *Price v. King,* 44 Kan. 639, 25 Pac. 43.)

In certain cases an heir may make an assignment of

a possibility of inheritance which a court of equity will enforce after the death of the ancestor, but this is not one of them. (*Clendening v. Wyatt,* 54 Kan. 523, 38 Pac. 792, 33 L. R. A. 278.) It is manifest that Dalton was not contracting to convey a future interest which he did not possess and which he expected to acquire at the death of his wife. The proof tends to show that the quitclaim deed was given merely to secure compliance with the contract by which Dalton agreed to pay Mrs. Knight thirty dollars per month for taking care of his insane wife, and upon that testimony the court held it to be a mortgage.

As the indebtedness to Mrs. Knight under the contract had been fully paid, her pretensions to a lien or to title to the land were without foundation, and the judgment of the court quieting Dalton's title was rightly rendered. It is therefore affirmed.

All the Justices concurring.