GERDA P. OLSON, a Minor, etc., *Appellee,* v. JOHN A. PETERSON et al., *Appellants.*

No. 18,153.

OLIVE OLSON et al., *Appellees,* v. JOHN A. PETERSON et al., *Appellants.*

No. 18,306.

#### SYLLABUS BY THE COURT.

1. DEED—*In Wife's Name—When Not Fraudulent.* If the husband is not in debt and there is no intention to defraud subsequent creditors, a purchase of real estate in the wife's name upon a consideration paid by the husband is valid.

2. ——— *Intent to Defraud—Moral Obligation of Grantee to Reconvey.* Where the owner of real estate with intent to defraud his creditors has conveyed his property to another without consideration, and subsequently settles with his creditors, the grantee is under a high moral obligation to reconvey the property, but can not be compelled to do so. The moral obligation to reconvey is a valuable and sufficient consideration for a deed by which the title is reconveyed to the original grantor, or at his direction or with his consent is conveyed to him and his wife.

3. ——— *Fraudulent Conveyance — Reconveyance to Husband and Wife—Presumptions.* In such a case where the lands conveyed consist of a farm occupied for many years by the grantor and his wife as their home and presumably acquired by their joint efforts, and after the settlement with his cred-

itors the grantee in the fraudulent deed conveys the lands to him and his wife without any valuable consideration being paid by the wife, there is no presumption that she was to hold the title conveyed to her in trust for the husband; and *prima facie* the deed vests in her the absolute title to an undivided half interest in the lands.

4. ———— *Same.* Whether the intent of the parties to such a transaction was to convey to the wife an absolute interest or merely to restore to the grantees the same title and interest which they had transferred by the former conveyance is a question for the jury to determine, where there are circumstances from which an inference of intent either way may be drawn.

5. SUBROGATION—*Mortgage—Rights of Payor.* Lands belonged to a husband and wife and were encumbered by a mortgage executed by them. After the death of the wife the husband paid the mortgage, and two years thereafter sold to one who purchased believing that he acquired full title. The heirs of the wife brought ejectment against the purchaser and recovered. *Held,* that the purchaser was entitled to be subrogated to the rights of the mortgagee and that the share of each of the heirs was properly chargeable with its proportion of the mortgage debt paid by the husband.

6. ———— *Rents and Profits—Burden of Proof.* In such a case the burden rested upon the plaintiff heirs to establish the allegation in their reply to the answer to the effect that the husband at the time the mortgage was paid held rents and profits for which he had not accounted.

Appeals from Ellsworth district court. Opinion filed December 7, 1912. Affirmed.

*Z. C. Millikin,* of Salina, for the appellants.

*Ira E. Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellees.

The opinion of the court was delivered by

PORTER, J.: On June 23, 1910, the appellees commenced three separate actions against appellants. The pleadings in each were alike and asked for the recovery of one-twelfth of a half section of land in Ellsworth county, and for the same proportion of the rents and

profits for three years next preceding. The appellees are the children of Oliver W. Olson and Alma Olson and their contention is that Alma Olson, who died intestate in 1902, was the owner in her lifetime of an undivided one-half interest in the lands and that they inherit from her.

The appellants answered in each action with a general denial, and a further defense, in substance, that if Alma Olson ever acquired any interest in the lands they were encumbered by a mortgage for thirty-two hundred dollars, which Oliver W. Olson, believing himself to be the owner of the lands, paid with his own money; and that thereafter appelant John A. Peterson purchased the lands in good faith and for full value from Oliver W. Olson and received from the latter a warranty deed therefor, a copy of which was attached to the answer; that the appellee thereupon abandoned the premises, and that John A. Peterson, believing that he had acquired full ownership thereof, made lasting and valuable improvements thereon, a particular description of which was set forth; that the appellee knew at the time that Peterson was purchasing in the belief that Oliver W. Olson was the owner of the lands and knew that Peterson was making the improvements, but made no objection and was therefore estopped to question his title. The reply asked that if it should be adjudged that appellee Gerda P. Olson acquired any interest in the land she should be required to contribute her equitable portion of the incumbrance paid by Oliver W. Olson.

The reply in addition to a general denial set up a copy of the deed by which it was claimed the title to the land in question passed to Oliver W. Olson and Alma Olson, and alleged that appellants were not entitled to any relief by reason of the payment of the mortgage for the reason that Oliver W. Olson had received and collected the rents and profits of the lands from the date of the conveyance in 1898 until 1906 and

had never accounted for the same; further, that when Peterson purchased he was charged with notice of the record of the deed conveying a one-half interest therein to Alma Olson, as well as with notice of the recorded release of the mortgage; that any improvements made by him upon the land were made with notice of the existence of this deed and were fully compensated by rents and profits received by him prior to June, 1907. The reply further alleged that at the time Peterson purchased the land appellee Gerda P. Olson was an infant and not familiar with her rights. The three-year statute of limitations and the five-year statute were also pleaded in bar of appellant's right to subrogation.

On these issues the case of Gerda P. Olson was tried before a jury and a general verdict was returned finding her to be the owner and entitled to the immediate possession of an undivided one-twelfth of the lands. Appellants' claim for subrogation was sustained, and from Gerda P. Olson's share of the rents and profits the court deducted $314.40 as her proportion of the mortgage and rendered judgment in her favor upon the general verdict.

The cases of Olive Olson and Mingnon Holmgren were consolidated and tried, with the same result. The appellants seek to reverse the judgments, and the appellees have prosecuted separate cross appeals in which it is contended that the court erred in permitting appellants to be subrogated to the rights of the mortgagee.

The undisputed facts, as shown by the evidence and findings, are that Oliver W. Olson and Alma Olson were husband and wife and in 1898 resided upon the half section of land in question, which belonged to the husband. He became involved in litigation, and for the purpose of defrauding creditors conveyed the land by warranty deed to his brother, Nels Olson. His wife joined in the deed which recited a consideration of

23—88 KAN.

$9000 without any consideration having been paid. Six months later, on the 30th of November, 1898, the litigation was compromised, and the next day Nels Olson by warranty deed conveyed the land to "Oliver W. Olson and Alma Olson, his wife," the description of the grantees following exactly the description of the grantors in the first deed. There was no actual consideration paid for the second deed. Both deeds were duly recorded. Each deed was made subject to a mortgage for $3200, payment of which the grantee assumed. Nels Olson knew the purpose for which the first conveyance was made. Oliver continued in possession of the land and Nels never exercised any acts of ownership over the same. Alma Olson made no claim of any interest in the land during her lifetime, she and Oliver W. Olson continuing to treat the property the same as they had treated it before the deed to Nels. The lands continued to be assessed in the name of Oliver, who paid the taxes until he conveyed it to Peterson. Alma Olson died intestate in 1902, leaving as her heirs her husband and the three appellees. Oliver Olson paid the mortgage in 1904, and in 1906 placed a new mortgage on the land in his own name for $4000, and in 1906 sold and conveyed the land by warranty deed to Peterson for $13,000. Peterson paid $9000 in cash and assumed the mortgage. He purchased without actual knowledge of the claims of appellees, and with no notice of the deed in which Alma Olson was named as a grantee except the notice imparted by the records. He testified that Oliver Olson told him the title was good, but that he did not rely upon the statement and saw Mr. Putnam, one of the officers of the investment company that made the loan of $4000, and that Putnam told him Olson had a good title and that he, Putnam, had an abstract of title which had been obtained when the loan was made. This abstract was then held by parties in the East and was not available. Peterson further testified that he never obtained any abstract and never examined

the records to ascertain the condition of the title.    At
the time of the death of Mrs. Olson, Gerda Olson was
six years of age, Mingnon twelve and Olive fourteen.
They testified that they knew nothing of their rights
in the land until after the death of their father in 1910.

The main contention is that the appellees in these
cases failed to show any right to recover, and that the
court erred in overruling a demurrer in each case to
the evidence, in refusing to direct a verdict for appel-
lants, and in overruling motions for judgment on the
special findings and for a new trial.    All these claims
of error are based upon the contention that the two
deeds being shown to have been parts of the same
transaction, the second was intended by the parties
merely to restore to the grantors in the first such in-
terest as each of them had conveyed by the former deed,
and that no evidence was offered from which the court
or jury would be justified in finding that the intent of
the parties was to convey any interest in the lands to
Alma Olson.    It is argued that the fact that the grant-
ors in the first deed are described as "Oliver Olson and
Alma Olson, his wife," while the second deed conveys
the same lands to "Oliver Olson and Alma Olson, his
wife," together with the undisputed evidence and the
findings of the jury that the land belonged to Oliver
Olson originally, that the first deed was made for the
purpose of defrauding his creditors, that Nels Olson,
the grantee, knew this, that there was no change of
possession under either deed, that both Oliver Olson
and his wife continued after the second deed to treat
the land in the same way they had formerly treated
it, that the wife paid no consideration for the convey-
ance, that Oliver Olson paid the taxes and the wife
never claimed any interest in or exercised any control
or ownership in the lands, are conclusive as to the intent
of the parties in the absence of any affirmative evidence
showing the contrary.    We concede the force of these
facts and circumstances as evidence tending to show

that by the second deed the parties intended merely to restore the same title and interest conveyed by the first; but we can not agree with appellants that they make a conclusive showing that such was the intent, or that their evidentiary force could be overcome only by what may be termed positive or affirmative evidence that the parties intended otherwise. Some force must be given to the express language of the instrument itself, which in plain terms grants and conveys the lands to the husband and wife in equal parts. *Prima facie* the intent was to convey to both. Nor is the force of the presumed intent destroyed by evidence that the wife paid no consideration. There were no creditors; no rights of third parties intervened. There was no rule of law or public policy to prevent the husband, if he so desired, from making a gift to the wife of the entire interest in the land or of a half interest therein. The husband having made a fraudulent conveyance by the first deed could not compel a reconveyance (*Weatherbee v. Cockrell*, 44 Kan. 380, 24 Pac. 417; *Robinson's Executors v. Blood's Heirs*, 64 Kan. 290, 67 Pac. 842, 20 Cyc. 617), but the law is well settled that Nels Olson was under a strong moral obligation to reconvey to Oliver or to any person to whom Oliver might request a conveyance made (*Springfield Homestead Asso. v. Roll*, 137 Ill. 205, 27 N. E. 184, 31 Am. St. Rep. 358), and that the moral obligation is a valuable and sufficient consideration for the second deed (*Bicocchi v. Casey-Swasey Co.*, 91 Tex. 259, 42 S. W. 963, 66 Am. St. Rep. 875). Oliver Olson might have requested the conveyance to be made to his wife alone, and had Nels in compliance with such direction conveyed to her it can not be doubted that she would have become the owner in fee simple, there being no creditors and no rights of third persons having intervened. A husband may convey his property to his wife for the consideration of love and affection when there are no creditors' rights to be affected. If the husband is not in debt and there is no

intent to defraud subsequent creditors a purchase in the wife's name upon a consideration paid by the husband is valid. (*Horder v. Horder*, 23 Kan. 391; *Tootle, Hosea & Co. v. Coldwell*, 30 Kan. 125, 1 Pac. 329; *King & Co. v. Wells*, 106 Iowa, 649, 77 N. W. 338.) Such a conveyance is. *prima facie* a gift. (*Pitkin v. Mott*, 56 Mo. App. 401; *Building Association v. Reed*, 96 Va. 345, 31 S. E. 514, 70 Am. St. Rep. 858.)

(See also, extended note to *Adoue v. Spencer*, 62 N. J. Eq. 782, 49 Atl. 10, in 90 Am. St. Rep. 484, 518.)

The acceptance by Oliver of the deed conveying the property in equal shares to himself and wife is some evidence tending to show that he was satisfied with the arrangement, and that he intended thereby to make a gift to his wife of a half interest in the land.

The appellants rely strongly upon the case of *Carter v. Becker*, 69 Kan. 524, 77 Pac. 264. There a wife inherited property from her father. In the settlement with her coheirs deeds were exchanged. The conveyance of her share was taken in the name of her husband as grantee. After her decease her children brought ejectment against the grantee of the husband, as in the case at bar. It was held that the question of whether the wife by consenting to the conveyance intended to make her husband a gift of her separate property was one of fact for the jury to determine; that the burden rested upon the plaintiffs to establish that the property was the separate property of the wife, but that when that fact was shown, it then devolved upon the defendant to show that a gift was intended and not a trust. A judgment in defendant's favor respecting the interest conveyed by the deed to the husband was reversed and a new trial ordered because of an instruction which charged that *prima facie* the deed was what it purported to be on its face and was made to the person intended, that unexplained the transaction made the grantee the owner of the property because of the presumption that all transactions are fair

and honest. The fault in the instruction was said in the opinion to be, that it "ignored the conceded fact that the property dealt with" (p. 528) was the separate property of the wife, and that in such cases the husband is presumed to hold the land in trust for her benefit.

That there is room for distinguishing the cases seems apparent. While in the present case the land belonged to the husband, it could hardly be called his separate property. It was not his at the time of the marriage; it did not come to him by gift, descent, devise or bequest. The family had lived upon the land and occupied a part of it as the homestead from the time it was purchased. Presumably the wife performed her share in acquiring it and adding to its value. Where under such circumstances the husband conveys or consents that the title to the land shall be conveyed to the wife without the payment by her of a valuable consideration, is there a presumption that she is to hold the title in trust for his benefit?

The presumption of law that was held to be controlling in *Carter v. Becker,* supra, arose upon the adoption in this country of the married women's property acts and because of the incapacities of the wife and the marital rights enjoyed by the husband at the common law. As said in the opinion in the Carter case (69 Kan. 524, 77 Pac. 264), the married women's act "was designed to secure to the wife, without additional effort or precaution on her part, that which before, under the same circumstances, might have become her husband's because of his marital rights, or because of her incapacities." (p. 529.) The presumption, which was lost sight of in the instruction in the Becker case, is one which the courts created after the adoption of the statutes placing the wife on a level with her husband in her property rights, and was required in order to secure to her those rights. Appellants insist that the principle is reciprocal, and that the presumption is of equal force where the title to property of the husband

is taken in the name of the wife. The married women's act defines the separate property of the wife as the property, real and personal, which she "may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to her by descent, devise or bequest, or the gift of any person except her husband." (Gen. Stat. 1909, § 4872.) There is no express statutory provision, as in California and some of the other states, declaring that the husband shall enjoy the same rights in property similarly possessed or acquired by him. He was not at the common law under disabilities, as was the wife, and probably the legislature deemed him capable of looking out for himself. Whatever presumption would obtain in respect of property owned by him at the time of his marriage or which came to him by descent, devise or bequest, or by gift from some person other than his wife, no reasonable basis can be said to exist for a presumption that the wife holds in trust for the husband, where, as in the present case, the consideration is furnished by him and the conveyance is made to her of an equal share of property, which so far as the evidence discloses, was the fruit of their combined efforts and sacrifices for many years.

Appellants contend further that ejectment will not lie to enforce a fraudulent contract, and that the heirs of Alma Olson can not maintain the action because of the fraud in the first conveyance. But there was no fraud in the second conveyance. Nels was under a moral obligation to reconvey. This supplied a valuable and sufficient consideration. The fact that Alma was the wife of the fraudulent grantor in the first deed furnished a consideration for a conveyance to her if satisfactory to the husband. So far as the title is concerned, both parties must claim under the deed from Nels Olson. The deed in question in plain terms conveys the land to Oliver W. Olson and Alma Olson. There is nothing uncertain or ambiguous in its terms.

We attach no importance to the fact that the granting clause of the deed conveys to "said party of the second part" and the warranty is to "said parties of the second part their heirs and assigns," or that in the clause providing for the assumption of the mortgage "the grantee assumes and agrees to pay" instead of the "grantees." Slight discrepancies of this kind are frequently found in instruments of conveyance drawn by careless or inexperienced scriveners, but in a case of this kind are insufficient in our opinion to indicate a different intention from that which would be apparent from the instrument if they were not present.

The court submitted to the jury the question whether it was the intention merely to restore to the original grantors the same title they formerly held, or whether it was intended to convey an absolute interest to the wife, and we find no error in the instructions given or in the refusal of those requested. The court instructed that the parties had the right to convey the real estate to Oliver Olson and Alma Olson, and that a deed so made would vest half the title in the wife and half in the husband if such was the intention of the parties; and that if the jury believed from the evidence that such was the intent of the parties they should find for the plaintiffs; that it was for the plaintiffs to show by a preponderance of the evidence that such was the intent; further, that the payment by the husband of the consideration for a conveyance to the wife does not necessarily vest the title to the real estate in her and that the intention of the parties would control. It was obviously not error to refuse an instruction that before the plaintiffs could recover they must show by a preponderance of the evidence that Peterson had actual notice of the existence of the deed from Nels Olson. It was of record and imparted notice. The jury had before them all the facts in connection with the execution of both deeds, the manner in which the parties treated the real estate after the conveyance, and all the

circumstances, and have found the facts against the appellants' contentions. The intention of the parties to the conveyance was one for a jury to determine. (*Carter v. Becker,* 69 Kan. 524, 77 Pac. 264.) The fact that the conveyance was not made by the husband directly would not affect the situation. If he consented or directed that the conveyance be made to her, the transaction would amount to a purchase of real estate in the wife's name upon a consideration paid by the husband.

The only question presented by the cross-appeals is whether it was error to charge the appellees with their proportionate share of the mortgage paid by Oliver Olson. We think the court rightly held that the appellants were entitled to be subrogated to the rights of the mortgagee. "Subrogation is a creature of equity, invented to prevent a failure of justice." (*Safe Deposit Co. v. Thomas,* 59 Kan. 470, 475, 53 Pac. 472.) In the case just citied (p. 475) an excerpt from *Johnson v. Barrett et al.,* 117 Ind. 551, 19 N. E. 199, 10 Am. St. Rep. 83, was quoted with approval. It states the general principles which seem to cover the facts in the present case.

"Subrogation is the substitution of another person in place of a creditor, so that the person substituted will succeed to all the rights of the creditor having reference to the debt due him. It is independent of any merely contractual relations between the parties to be affected by it, and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter." (p. 554.)

It is insisted, however, that Peterson never paid the mortgage and that it was paid years before he purchased the land. If Oliver Olson had been sued by the children to recover their interest as heirs of Alma Olson he could have claimed the right to be recompensed for their share of the mortgage. He was not a volun-

teer; he was a party to the mortgage; it was executed by himself and wife and both had assumed its payment. The satisfaction of the mortgage benefited the appellees and in equity their shares would have been chargeable with their due proportion in any suit brought by them against him. By his conveyance to Peterson the latter became the assignee of whatever rights Oliver had to subrogation. In Harris, Law of Subrogation, p. 327, the case of *Jones v. McKenna*, (72 Tenn.) 4 Lea, 630, is cited. There property of infants had been sold under foreclosure proceedings which were afterward held to be invalid because the infants were not made parties, and it was held to be the settled law in such a case that whether the sale was made to pay debts of the ancestor, or directly for the benefit of the infants, the latter will be required to refund to the purchaser so much of the purchase money as was appropriated in the payment of debts which were a lien on the property. The equity of the rule is said to be that all the parties are placed in *statu quo*. In Sheldon on Subrogation, 2d ed., p. 58, it is said (citing *Weimer v. Porter*, 42 Mich. 569, 4 N. W. 306, and *Blodgett and another v. Hitt*, 29 Wis. 169, 182 *et seq.*) respecting the right of the person claiming to be reimbursed:

"It is merely necessary that his payment should have been made in good faith for the protection of an interest which he believed himself to have in the estate, and in discharge of a burden actually resting upon the property, so that his payment has increased the value of the estate for the benefit of those who turn out subsequently to be entitled to the title."

Whatever rights Oliver would have had to reimbursement from the appellees passed to Peterson. Applying the foregoing principles of equity to the facts, it follows that the heirs of Alma Olson, who subsequently turn out to be entitled to a portion of the lands, the value of which was increased by the payment made by the assignee of appellants, should reimburse the latter to

the extent of their proportionate shares in the lands. The tendency of courts everywhere is to extend rather than to restrict the principle of subrogation, modifying it to meet the circumstances of each case where in accordance with recognized maxims it should be allowed in equity and good conscience. (37 Cyc. 373, and cases cited.) The answer set up a plea of subrogation. The reply averred that at the time the father of the appellees paid the mortgage he held rents and profits of the lands for which he had never accounted, and which were sufficient to satisfy the mortgage indebtedness. The burden upon this issue was upon the appellees, and not upon the appellants. The latter were not required to allege that when the payment was made there was not on hand rents and profits which should have been applied in satisfaction of the mortgage. The matters alleged in the reply were in the nature of a confession and avoidance which required evidence to establish. The petition or other pleading asking subrogation need not anticipate defenses. (*Richards v. Yoder,* 10 Neb. 429, 6 N. W. 629; 37 Cyc. 391.)

The judgment in each case is affirmed.