McCANN v. COMMISSIONER OF INTER-
NAL REVENUE.

No. 7031.

Circuit Court of Appeals, Sixth Circuit.

Jan. 11, 1937.

Laurence Graves, of Washington, D. C., G. W. A. Wilmer, of Middletown, Ohio, Ike Lanier, of Cincinnati, Ohio, and Pickrel, Schaeffer, Harshman & Young, of Dayton, Ohio, for petitioner.

Harry Marselli, of Washington, D. C. (Frank J. Wideman, Sewall Key, and Norman D. Keller, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

This is a proceeding to review an order of the Board of Tax Appeals sustaining a deficiency assessment of an estate tax made by the Commissioner of Internal Revenue against the estate of Lucy C. Shartle, who died in November of 1926. The facts found by the Board are: The decedent's husband, Charles Shartle, owned and operated a machine repair shop and was also engaged in perfecting inventions relating to machinery for the manufacture of paper. In 1911, being in debt and fearing litigation over patents which he held, he incorporated his business under the name of the Shartle Bros. Machine Company and issued the majority of the stock of the corporation to his wife, the decedent. The decedent paid nothing for the stock. In 1912 Shartle organized another company, to which he conveyed title to his patents. The capital stock of this

276

company was issued· to the holders of the stock of the machine company, and the decedent received her proportionate share. Later this company was taken over by the machine company and paid for by a new issue of the latter company's capital stock. The decedent, as holder of a majority of the stock of the selling company, received her proportion of the new issue of stock. None of the certificates for this or the original stock issued in her name was ever delivered to her. They were all placed in the office of the machine company under the control of her husband, who with her consent ·continued to control and operate the company as though he were the sole owner of it. Decedent was made a direc- ·tor of the company, but she attended none of the directors' meetings and took no part in the company's affairs. The dividends on the stock held in her name, when declared, were credited to her account on the books of the company and then transferred to her husband's account. This was done pursuant to her husband's instructions and with her approval. On November 6, 1926, Shartle sold the machine company without consulting the decedent. The buyer issued a check to the decedent for $1,070,086.11 in part payment for the stock standing in her name. The check was delivered to her husband, and the following day it was taken to the bank and the decedent, by direction of the husband, indorsed it in blank and delivered it to him. He placed it in the bank to his own credit, and later invested the proceeds in government bonds, which he held at the time of her death on November 26. After her death the deferred payments on the stock standing in her name, with payments for other assets of the company, were made to him as executor of her estate. In making an estate tax return as executor of her estate, he included neither these amounts nor the original payment of more than a million dollars in her taxable estate. The Commissioner held that all of these sums, together with dividends paid on the stock for the years 1925 and 1926, were a part of the decedent's estate, and assessed the estate tax accordingly. The ground on which he held that the amount represented by the check was a part of her estate was that the indorsement and delivery of the check to the husband was a transfer made in contemplation of death. The Board of Tax Appeals held that the check was not indorsed and delivered to decedent's husband as a gift in contemplation of death, but

sustained the assessment on the ground that as the stock in the machine company was issued to the decedent by her husband in order to cheat, hinder, or delay his creditors, it became her absolute property, with the result that so much of the proceeds of its sale as was represented by the check, notwithstanding its transfer to the husband, remained such at the time of her death.

■ It is true that where property is transferred by a husband to his wife without consideration there is a presumption that it is a gift, but it is also true that such presumption is one of fact and may be rebutted by a showing of the real intention of the parties. Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L. Ed. 793. The facts found by the Board clearly rebut the presumption of a gift of the stock to the decedent. They show that it was contemplated by the parties that the stock should be held by the wife for the husband, and that both thereafter regarded it, with the dividends thereon and proceeds from its sale, as his property and as not belonging to her. There can be no question that the indorsement and delivery of the check for over a million dollars effected a transfer of title thereto to the husband. Although reaching that conclusion, the Board was apparently of opinion that it did not transfer the funds represented by the check, since there was no intent on the part of the decedent to transfer or on the part of the husband to accept the check as a gift. We agree that there was no gift of the check, but we are of the opinion that there was a valid transfer to the husband of so much of the proceeds of the sale of the stock as was represented by the check, and that a sufficient consideration therefor was the moral obligation of the decedent to retransfer or restore the stock to the husband upon his request. While it is true that where property has been transferred by a husband to his wife in order to cheat, hinder, or delay creditors, equity will not compel ʼa retransfer to the wrongdoer, it is also true that there is no rule of law or equity which prohibits the transferee from voluntarily making restoration. Knight v. Dalton, 72 Kan. 131, 83 P. 124; Olson v. Peterson, 88 Kan. 350, 128 P. 191; Springfield Homestead Association v. Roll, 137 Ill. 205, 27 N.E. 184, 31 Am.St.Rep. 358; First Nat. Bank of Appleton v. Bertschy, 52 Wis. 438, 451, 9 N.W. 534; Fargo v.

Ladd and Reed, 6 Wis. 106; Cartledge v. McCoy, 98 Ga. 560, 25 S.E. 588; Second Nat. Bank of Lafayette v. Brady, 96 Ind. 498; White v. Brocaw, 14 Ohio St. 339. Compare Smith v. Ellison, 80 Ark. 447, 97 S.W. 666. Similarly, when that has been done, it is a valid transaction as between the parties and as to other parties except those who may have extended credit to the wife in reliance on her ostensible ownership. Hyde v. Chapman, 33 Wis. 391. The government in attempting to assess an estate tax does not occupy the position of a creditor relying on such ownership. The transfer was voluntarily and lawfully consummated prior to the event which brought into operation the estate tax statute (Revenue Act 1926, tit. 3, § 300 et seq., 44 Stat. 69), and as found by the Board, was not made in contemplation of the decedent's death. We conclude, therefore, that the fund represented by the check was not a part of the decedent's estate at the time of her death, but was the property of the husband. For like reasons, the dividends of 1925 and 1926 transferred to the husband's account with decedent's consent became his property and were not a part of her taxable estate. Since, however, there was no restoration to him prior to the death of the wife of so much of the stock as was represented by the deferred payments, they are to be treated as a part of her estate.

The order of the Board is reversed and the cause remanded for proceedings consistent herewith.