## JAMES WEATHERBEE v. ELIAS COCKRELL.

FRAUDULENT CONVEYANCE — *Effect as to Parties.* Where the purchaser of a tract of land, who is in debt as a surety for others, has the grantor, when paid the consideration, execute a deed of general warranty for the land to his sons, and the purchaser has the conveyance so made to deceive and defraud his creditors, the deed is binding between the parties, and is also binding between the purchaser and a grantee of his sons, who stands in their shoes.

*Error from Greenwood District Court.*

ON the 14th day of May, 1886, *James Weatherbee* commenced his action against *Elias Cockrell*, and alleged in his petition that —

"On or about the 28th day of January, 1879, plaintiff purchased the following-described lands situate in Greenwood county, to wit: The east half of section 23, in township 23 south, of range 12 east; that at the time of said purchase, said plaintiff caused and procured the conveyance of said land to Paul Weatherbee and Ben. Weatherbee, sons of plaintiff; that the conveyance was so made in trust for the benefit

and use of the plaintiff ; that the entire consideration paid for the land was paid by plaintiff, and no part thereof was paid by Paul and Ben. Weatherbee; that afterward, to wit, on the — day of ——, 1885, Paul and Ben. Weatherbee, without any right or authority, and in fraud of plaintiff's rights, conveyed the land to defendant; that at the time and before the conveyance of said land by Paul and Ben. Weatherbee to defendant, the defendant was informed and well knew of the equitable title to the lands, and that the same was in the plaintiff ; that the bare legal title was in Paul and Ben. Weatherbee in trust for plaintiff ; that with that knowledge the defendant received the legal title from said Paul and Ben. Weatherbee.

" 2. For a second and further cause of action, plaintiff says that he is the equitable and legal owner of the lands described in plaintiff's first cause of action; that he is entitled to the immediate possession of the same, and that defendant wrongfully and unlawfully detains the possession thereof against plaintiff.

" Wherefore, plaintiff prays judgment against said defendant; that the defendant be compelled to convey the legal title to said land to the plaintiff, and that plaintiff have the immediate possession thereof, and for costs."

On the 3d day of December, 1886, the defendant filed a general denial to the petition. Trial had on the 20th of September, 1887. After the plaintiff had introduced all of his evidence, the defendant demurred thereto upon the ground that the evidence did not prove or tend to prove a cause of action in favor of the plaintiff and against the defendant. This demurrer was sustained by the court, and judgment rendered thereon. To the ruling and judgment of the court the plaintiff excepted, and brings the case here.

*Clogston, Hamilton, Fuller & Cubbison,* for plaintiff in error

*Ira P. Nye,* and *Howard J. Hodgson,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below by James Weatherbee to compel Elias Cockrell to convey to him one-half of a section of land. The evidence upon the trial was substantially as follows: In January, 1879, James Weath-

erbee resided in Ohio. He purchased the land in controversy from John Burry, and paid $3,000 for it. He directed Burry to execute a conveyance of the land to his two sons, Paul and Ben. Weatherbee. This was done. Paul was then seventeen years of age and Ben. ten years of age. Shortly after this conveyance, the plaintiff and his sons removed to Kansas and lived near the land. Paul and Ben. Weatherbee sold the land for $3 an acre to William Cockrell. Soon after, at the instance of William Cockrell, the deed was made from Paul and Ben. Weatherbee directly to Elias Cockrell. At the time that Paul and Ben. Weatherbee sold the land to William Cockrell for $3 an acre it was worth $10 an acre. William Cockrell claims he sold the land to his brother at $4 an acre. Before William Cockrell purchased the land, he was informed by plaintiff "That the land belonged to him, and that he had better not buy it; if he did he would probably buy a lawsuit." Plaintiff also testified that William Cockrell was the agent or partner, or both, of Elias Cockrell; that they did business together, under the firm-name of Cockrell Brothers.

The trial court sustained a demurrer to the evidence of the plaintiff, and rendered judgment in favor of the defendant for his costs. The ruling and judgment of the trial court are complained of. This complaint is not well founded. Upon the facts as disclosed upon the trial, the demurrer to the evidence was properly sustained. It clearly appears from the evidence that when the plaintiff purchased the land in dispute, he had the deed executed to his sons, then minors, for the purpose of defrauding his creditors. He had signed two notes as surety. These notes amounted to $1,500, and he had the land conveyed to his sons so that it would not be subject to the payment of these notes; at least the conveyance was so made with the hope, on the part of the plaintiff, that it would deceive, delay, and defraud his creditors. Of course, as to the creditors of the plaintiff, the conveyance of the land to the sons was fraudulent, and if the creditors of the plaintiff were making any claim to the land, the conveyance would be so regarded. (Gen. Stat. of 1889, ¶ 7165.) A fraudulent contract,

voluntarily made, binds the parties, although void as to creditors. There is no obligation upon a court of equity to extricate a fraudulent grantor from the effect of his voluntary act.

"As between the parties themselves, and all persons claiming under them in privity of estate, voluntary conveyances are binding, but so far as they have the effect of delaying, defrauding, or deceiving creditors, voluntary conveyances are not *bona fide*, and are void as against creditors to the extent to which it may be necessary to deal with the property to their satisfaction. To this extent, and this extent only, they will be treated as if they had not been made. To every other purpose they are good." (Kerr on Fraud and Mistake, 199.)

"A conspiracy to defraud creditors is an offense against good morals, common honesty and sound public policy, for it is a let and hindrance to the due course and execution of law and justice, and tends to overthrow all true and plain dealing, bargaining and chevisance between man and man, without which no commonwealth or civil society can be maintained or continued. It is therefore a proper case for the application of the maxim, *In pari delicto melior est conditio defendentis* [in equal fault, the possessor's case is the better.]" (Bump on Fraudulent Conveyances, 443; *Dunning v. Bathrick*, 41 Ill. 425; *Railroad Co. v. Mathers*, 71 id. 592.)

The conveyance made to the sons, at the instance of their father, is binding between the parties, and therefore is binding between the plaintiff and the grantee of the sons, who stands in their shoes.

Further, under ¶ 7164, Gen. Stat. of 1889, the plaintiff has no resulting trust by the conveyance to his sons. That section reads:

"When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

He does not bring himself within the terms of ¶ 7165 or 7166, Gen. Stat. of 1889. (*Mitchell v. Skinner*, 17 Kas. 563.) The sons did not agree to hold the land in trust, or otherwise, for their father. They never agreed, by parol or otherwise, to reconvey the land to their father, or to anyone for

his benefit. Plaintiff claims, however, that the money paid by him for the land was exempt under the statute of the United States, and therefore that no fraud was intended, or could have been intended, in having the land conveyed to the sons. The record does not show, or tend to show, that the money was exempt. The only evidence upon this point is that of the plaintiff, and reads as follows:

"Q. Was it your money that paid for the land? A. It was my individual money that paid for it; $3,000 was money that I earned as a United States soldier during the late war."

This evidence does not show, or tend to show, that the $3,000 was pension-money, or exempt within the terms of the United States statute. (*Cranz v. White*, 27 Kas. 319.)

It is also claimed that as the deed or conveyance to the sons was not offered in evidence and is not contained in the record, it will be presumed as the plaintiff referred to it as a deed of trust, that it declared upon its face that the sons held the land in trust for their father, the plaintiff. The record does not support this claim. It was admitted by the parties upon the trial that the conveyance to the two sons was in the form of a warranty deed from John Burry to them. Again, John Burry testified that the deed which he executed "was the ordinary form of a warranty deed."

The ruling and judgment of the district court must be affirmed.

All the Justices concurring.