No. 21,937.

EMMA GREGG WYATT (formerly EMMA GREGG), *Appellant*, v. CHARLES E. COLLINS et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. OPENING UP JUDGMENT—*Loss of Files by Fire—Presumptions*. After a judgment by default had been opened up under section 83 of the civil code, and the cause had been tried, the files of the case were destroyed by fire. *Held*, on the facts stated in the opinion, it will be presumed that the application to open the judgment complied with the statutory requirements.

2. SAME—*Answer Filed a "Full Answer" within the Statute*. An answer filed with an application to open a judgment in a suit to quiet title, which expressly denies the facts pleaded in the petition, is a "full answer" within the meaning of the provisions of section 83 of the civil code.

3. SAME—*Judgment by Default—Amended Answer—Judicial Discretion*. After a default judgment has been opened up under the provisions of section 83 of the civil code, it is within the discretion of the court to permit an amended answer to be filed.

4. SAME—*Fraudulent Conveyances*. The evidence and findings are held sufficient to establish that certain conveyances were made in fraud of creditors.

5. SAME—*Land Fraudulently Conveyed May Not be Recovered by Grantor Nor His Heirs*. With the intent to hinder and delay his creditors, a husband and wife conveyed certain real estate, which the husband owned, to a third person, who at once conveyed the title to the wife. Several years after the husband's death, the widow conveyed to her daughter the share to which the latter would have been entitled if the property had belonged to the deceased. The daughter died, and the widow sued the heirs of the daughter to quiet her own title and to cancel the deed conveying an interest to the daughter. The defendants pleaded that the conveyances were made in fraud of creditors. *Held*, that while the law is well settled that where property is transferred with a fraudulent purpose, neither the grantor nor his heirs can recover it, the answer stated a good defense to the action.

6. SAME. In such a case, the court having found that all the conveyances were made for a fraudulent purpose in which the plaintiff participated, a judgment denying her any relief will be sustained.

7. SAME—*Proof Required to Show Fraud*. In such a case, it is held not necessary for the defendants to show all the facts that would have been required of a creditor in order to set aside the conveyances.

8. SAME—*Statute of Limitations.* The two-year statute of limitations
with respect to actions for relief on the ground of fraud has no ap-
plication to a case where the fraud is pleaded merely for the pur-
pose of preventing recovery by plaintiff, and where the defendants
obtain no affirmative relief. (*Muckenthaler v. Noller,* ante, p. 551.)

Appeal from Cherokee district court; JAMES N. DUNBAR,
judge. Opinion filed May 10, 1919. Affirmed.

*R. E. Rosenstein,* of Baxter Springs, *Charles Stephens,* and
*Paul McCaskill,* both of Columbus, for the appellant.

*C. A. McNeill,* and *Al. F. Williams,* both of Columbus, for the
appellees.

The opinion of the court was delivered by

PORTER, J.: In this action plaintiff sought to quiet her title
to 80 acres of land in Cherokee county. The defendants are
her grandchildren, heirs of her daughter, Blanche C. Collins,
deceased, and their father, Charles E. Collins. From a judg-
ment denying her relief, the plaintiff appeals.

The petition alleged that prior to May 24, 1902, plaintiff,
the widow of Dr. G. G. Gregg, was the owner and in possession
of the land, and on that date executed a deed conveying to her
daughter, Blanche C. Collins, an undivided one-fourth interest,
and sent the deed to her brother, J. E. Tutton, president of
the Columbus State Bank, instructing him, in the event of her
death, to deliver the·deed to her daughter; and that without
her authority, and by mistake, her brother recorded the deed
which plaintiff asked to have canceled and set aside.

Blanche C. Collins died in October, 1903, leaving as her only
heirs at law, Charles E. Collins, her husband, and Georgia,
Pauline, and Don Collins, her children, two of whom are
minors. When the suit was commenced, the defendants were
living in Colorado, and service was obtained upon them by
publication. A guardian *ad litem* was appointed for the
minors, and on October 5, 1914, judgment was entered by de-
fault, as prayed for in the petition. On December 28, 1916,
the grandchildren—the minors by their next friend—filed
their application to have the judgment opened up. Over plain-
tiff's objections, the court opened up the judgment so far as
it affected the children of Blanche C. Collins. On March 19,

1917, the defendant, Charles E. Collins, filed his separate application to be let in to defend and, over plaintiff's objections, the court sustained the order, and his answer was filed. An amended answer was filed by all the defendants sometime later, in which it was alleged that at the time of the commencement of the action the plaintiff was the widow of the late Dr. G. G. Gregg, who died intestate July 21, 1895; that during his lifetime he owned the land in controversy, and that on August 25, 1894, he was a surety on a bond given by H. R. Crowell to indemnify Cherokee county against loss on account of a deposit of public funds in the bank of which Crowell was an officer, that the bank became heavily involved, and delinquent in the payment of the money due the county, and that Dr. Gregg became alarmed because of his liability on the bond, and in order to place his real estate beyond the reach of Cherokee county as a creditor, executed a deed, in which plaintiff joined, purporting to convey the land to James B. Maussner, a resident of Albion, N. Y.; that a few days thereafter James B. Maussner, a single man, executed and delivered, without any consideration, but as part of the original transaction, a quitclaim deed conveying the legal title of the land to Mrs. Gregg; that during the lifetime of Dr. Gregg he and the plaintiff kept possession of the deed from Maussner; and that it was not placed on record until February 27, 1902. The answer alleged that on the 24th day of May, 1902, plaintiff executed her deed, conveying to her daughter, Blanche C. Collins, an undivided one-fourth interest in the land, because Blanche C. Collins, as one of the heirs of her father, was entitled to a one-fourth interest, and for the purpose of correcting the fraudulent, unlawful and wrongful transfer of the property to the plaintiff, and that the deed from plaintiff was for a valuable consideration and was duly delivered and recorded with the knowledge, consent and understanding of all the parties thereto.

Motions to strike from the answer all references to the purpose and intention of Dr. Gregg and the plaintiff in executing the deed to Maussner, were overruled. The issues having been made up, the court found the facts substantially as the defendants claimed in their answer, and held that the deed to Maussner and the quitclaim from him to plaintiff were

made for the purpose of transferring the title to Mrs. Gregg, now Mrs. Wyatt, for fraudulent purposes, and with the intent to avoid liability on the Crowell bond; that the deed made by plaintiff to Blanche C. Collins, as well as the deed to her son, Paul Gregg, were caused to be placed of record in May, 1902, by plaintiff's brother, to whom they were sent by plaintiff, and that all the deeds were part of the original fraudulent transaction.

As conclusions of law, the court found that the plaintiff is not entitled to ask for equitable relief from the situation in which she has been placed by reason of these transfers for the purposes for which they were made, and judgment was rendered that defendants recover their costs.

Concerning the circumstances under which he executed the quitclaim deed, James B. Maussner testified, in a deposition, that he visited at Columbus, and became acquainted with Dr. Gregg; that after he returned home he received a quitclaim deed in a letter from the doctor with the request that he execute and return it; that in the letter was enclosed $1.00, which he assumed was to pay the notary; that he executed the deed and returned it at once to Dr. Gregg; and that he had no knowledge of the existence of a deed conveying the property to him, until shortly before the deposition was taken. He visited at Columbus after the quitclaim deed was executed, saw and talked with Dr. Gregg, but no reference was made to the transaction by either of them.

There is a contention that defendants failed to show by affidavit that they had no actual notice of the action in time to make their defense before judgment. The original files of the case were lost in a fire which destroyed the law office of one of plaintiff's attorneys, and the files have been reproduced from the recollection of the parties and the attorneys. Several affidavits have been filed by defendants' attorneys, and a certificate by the judge before whom the case was tried, to the effect that before the judgment was opened up the statutory requirements were fully complied with. Aside from this, there is a presumption that the trial court did not open the judgment upon an application which failed to comply with the statutory requirements. A technical objection seriously urged is, that the judgment was improperly opened as to Charles E. Collins,

on the ground that he did not file a "full answer," as required by the statute. (Civ. Code, § 83, Gen. Stat. 1915, § 6974.) The court evidently considered the answer sufficient to state a defense. It expressly denied the facts relied upon by plaintiff in her petition as entitling her to the relief she asked. It was a full answer, notwithstanding the fact that subsequently the defendants filed a fuller one.

The first answers made no reference to the fraud in the transactions by which the property was conveyed to plaintiff, and it is seriously urged that it was error to permit defendants to join in amending their answers, and to change the character of their defense. It is always in the discretion of the court to permit amended pleadings to be filed; and, moreover, the amended answer merely added another defense; the facts alleged in the first answers were again relied upon as one defense. Besides, the plaintiff having brought the suit to quiet her title, the court might, in its discretion, permit an amendment setting up any defense which showed that she was not entitled to relief.

Plaintiff's principal contention is, that defendants, claiming their title as heirs of Geo. G. Gregg, stand in his shoes, and that, even if the transfer of the title through Maussner to plaintiff was fraudulent, inasmuch as Dr. Gregg could not in his lifetime have had the conveyance set aside, neither can his heirs. The law is well settled that where property is transferred with a fradulent purpose, neither the grantor nor his heirs can recover it. (*Weatherbee v. Cockrell*, 44 Kan. 380, 24 Pac. 417; *Robinson's Executors v. Blood's Heirs*, 64 Kan. 290, 67 Pac. 842; *Reemsnyder v. Reemsnyder*, 75 Kan. 565, 89 Pac. 1014; *Olson v. Peterson*, 88 Kan. 350, 128 Pac. 191.)

The plaintiff is in the predicament of attemping to use a two-edged sword, which cuts both ways and applies to her as well as to the defendants. It is true that the defendants and the plaintiff are, in a sense, equally bound by reason of the fraud of Dr. Gregg; but all the court determined is that the plaintiff cannot recover, because of her own participation in the fraud. The defendants recover nothing but their costs; they gain no advantage by reason of the fraud of their ancestors, and their situation remains just what it was when plaintiff brought her suit.

There is evidence to sustain the finding, not only of fraud in

the transfers of the title to plaintiff, but also that she executed the deed to her daughter for the purpose of carrying out the same fraudulent purpose. The testimony of Paul Gregg in reference to statements made by his mother to him; her admissions in letters to him attempting to explain her desire to have him reconvey his interest to her before her second marriage occurred, and her statement in one letter to the effect that she had always regretted her neglect to obtain a deed from Blanche in the latter's lifetime, indicate that after her daughter's death she was anxious to secure the legal title, possibly, to prevent any part of the property going to her son-in-law. These statements, and other circumstances, tended to disprove her claim that the conveyances to her children in 1902 were not intended to be delivered and recorded. In another letter there were admissions tending to show that she must have known all the time the purpose for which the several transfers were made.

After the suit was filed, she went to Colorado and visited her son, and also visited at the Collins' home, but did not mention to any of the defendants the fact that she had brought the suit, or was intending to bring one. When these facts were shown, she was called in rebuttal and testified that she was not aware at the time she was in Colorado that her attorneys had gone so far as to file the petition.

It is urged that there was no fraud shown in the conveyance to Maussner; that fraud is never presumed, but must be proved by clear and convincing evidence. In this connection it is said in the brief that the "testimony discloses that Dr. Gregg wanted the plaintiff to have this property for their home, and that he discussed the matter with his friend, Mr. Kane, and it was their joint opinion that a transfer from a husband and wife must, under the law, be made through a third person." This is placing a much more favorable construction upon the testimony of Mr. Kane than we are able to give it. The witness stated that in several conversations with Dr. Gregg the latter told him two or three times that he and one other person were the only sureties on the bond who were responsible, and that he wanted to fix matters so as to protect himself. Mr. Kane then suggested that he deed the property through Maussner to Mrs. Gregg, which Dr. Gregg concluded to do. Mr. Kane was entirely disinterested as a witness, and doubtless the court

believed his testimony. In view of the positive testimony showing the fraudulent purpose, it is unnecessary to consider the decisions cited in the briefs to the effect that a creditor has a right to freely dispose of his property, notwithstanding he has no intention to use the proceeds in payment of his indebtedness. It is urged, however, that no conveyance can be in fraud of creditors, unless there are, in fact, creditors to defraud, and that it was incumbent upon the defendants to go further and show that Crowell was, in fact, a defaulter, and that the liability of the sureties had not since been discharged, and authorities are cited to the effect that a fraudulent intent alone is not sufficient, that there must be actual fraud, hindrance or delay resulting therefrom to creditors, and that because the defendants have not shown that Cherokee county actually sustained a loss, the defense of fraud fails. It must be remembered that this is not an action to set aside the conveyances because of the fraud. The defendants seek merely to show the fraudulent purpose of the conveyances in order to estop plaintiff from asking a court of equity to grant her relief. For these reasons, we think that it was not necessary to show all the facts that would have been necessary for a creditor to establish in order to set aside the conveyances. All the conveyances made for the continuing purpose of the original conspiracy to defraud creditors are valid as between the parties, and voidable only at the suit of a creditor.

"A creditor is not authorized to interfere with any disposition which his debtor may make of his property, so long as he is not injured thereby." (12 R. C. L. 661.)

Assuming that the conveyances were made for a good consideration, they are valid as between the parties, and cannot be set aside, unless it appears to be necessary for the protection of a creditor; and this is a sufficient answer to the contention that the defense failed because it was shown that Dr. Gregg possessed other property out of which his indebtedness might have been made. While that might be a sufficient reason why the creditor could not complain, it furnishes no reason why a court of equity should relieve the plaintiff from the embarrassment resulting from her fraudulent purpose in making the transfers.

Finally, it is contended that Charles E. Collins is shown by his own testimony to have known the facts relied upon in his answer for many years, and that the statute of limitations which requires that actions for relief on the ground of fraud must be brought within two years from the discovery of the fraud prevents him from pleading the fraud. The question, however, is not whether he can maintain an action, but whether the plaintiff's action must fail. The court granted no affirmative relief to any of the defendants; it was merely held that plaintiff, by reason of her participation in the fraudulent transactions, is not entitled to any relief from the situation in which she finds herself. Under the decision in the case of *Muckenthaler v. Noler,* ante, p. 551, the two-year statute of limitations with respect to actions for relief on the ground of fraud has no application to a case where the fraud is pleaded merely for the purpose of preventing a recovery by plaintiff, where the defendant asks no affirmative relief. The situation is not changed by the fact that the defendants asked affirmative relief, since the court granted them none.

The judgment is affirmed.

---

### OPINION DENYING A REHEARING.

#### (Filed July 5, 1919.)

As exhibits to a motion for rehearing there is the affidavit of the clerk of the district court stating that to his knowledge no affidavits were filed in support of the application to open judgment; also affidavits of two different sheriffs to the effect that before they served plaintiff with notice of the application they took the precaution to compare the copies with the original application, and that the latter was not sworn to. However, the statute does not require the application to be verified.

There is, and can be, no controversy over the fact that the court opened up the judgment on the oral testimony of two witnesses, who were examined by the defendants and were cross-examined by the plaintiff. The sole contention presented by the motion for rehearing which deserves attention arises over the construction of section 83 of the code of civil proced-

ure, which provides that before the judgment shall be opened, "the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and [to] make it appear to the satisfaction of the court, by affidavit, that during the pendency of the action he had no actual notice," etc.   (Gen. Stat. 1915, § 6974.)

It is seriously contended that the statute can only be complied with by the filing of an affidavit, and that oral testimony is not competent.  This would make the filing of an *ex parte* affidavit of more force and effect than testimony produced in open court where the plaintiff, as well as the court, has an opportunity to cross-examine and ascertain whether or not the party making the application had actual notice.   Where a judgment has been opened up at the instance of parties who have, as in the present case, a valid defense, the section of the code should receive a liberal, in place of a narrow technical, construction.  It hardly requires a liberal construction, however.  Its plain purpose is the requirement that before a default judgment taken upon service by publication only shall be opened, it must be made to appear to the satisfaction of the court that the applicant had no actual notice in time to defend. Frequently, the applicant lives at a distant place, and so the statute expressly authorizes the showing to be made by affidavit.  It was not necessary for the legislature to authorize district courts to hear oral testimony upon an issue of fact. It is usually an advantage to the plaintiff to have the application heard on oral testimony.  Besides, it is hardly conceivable that this question was raised in the court below; if the mere failure to file an affidavit had been relied upon and called to the trial court's attention, the objection could have been readily met by the filing of an affidavit of the same persons who testified orally.

The opinion contained the statement that plaintiff's contention was that defendants failed to show "by affidavit or otherwise" that they had no actual notice, etc.   It is said this misstated plaintiff's contention.  The opinion has been corrected to show the contention was that the filing of an affidavit was necessary.  In the opinion the paper  filed by the former judge of the district court was referred to as an affidavit.  This was

taken from a statement in the abstract; but our attention is challenged to the fact that the paper signed by the former judge was a certificate, and not an affidavit. In this respect, also, the opinion has been corrected.

Rehearing denied.