No. 32,683

J. E. BURTRUM, *Appellee,* v. THE CHETOPA STATE BANK OF CHETOPA (*Defendant*) and J. W. BURTRUM (Intervener), *Appellants.*

(54 P. 2d 1206)

Opinion filed March 7, 1936.

496

*Payne H. Ratner, Stuart T. McAlister* and *Louise Mattox,* all of Parsons, for the appellants.

*Earl Bohannon,* of Parsons, and *Carey Caldwell,* of Vinita, Okla., for the appellee.

The opinion of the court was delivered by .

HARVEY, J.: Plaintiff, J. E. Burtrum, sued the bank on a time certificate of deposit for $10,400.59 issued by the bank to plaintiff, which sum the bank had refused to pay him on demand. The bank answered that it had first issued the certificate to plaintiff's father, but at his request had issued it to plaintiff, dating it back; that thereafter the father brought the certificate in, bearing plaintiff's endorsement as well as his own, and had a new certificate issued to the father. It alleged that it is informed and believes the sum is claimed by both plaintiff and his father; "that defendant is holding said money subject to the order and decision of the . . . court, and will pay and deliver said money to whomever this court decides and decrees is entitled to it." It at no time filed the affidavit or took the other steps provided by R. S. 60-418. Plaintiff replied that he had never endorsed the certificate, and any endorsement appearing thereon was unauthorized.

The father, J. W. Burtrum, by leave of court, filed an intervening petition in which he claimed the proceeds of the time certificate, alleged it was his all the time, and that he was authorized to sign plaintiff's name to the endorsement. Plaintiff answered the intervening petition and denied the right of the father to sign his name, and by an amended answer alleged that the father put it in plaintiff's name to cheat and defraud his mother, who had brought an action against J. W. Burtrum for divorce. This was denied by J. W. Burtrum. The intervener demanded a jury trial, which the court denied. As the pleadings were finally framed the principal controversy between the parties related to the authority of J. W. Burtrum to endorse his son's name on the certificate, and whether his having the certificate made to plaintiff was for the purpose and had the effect of defrauding his wife in the divorce action. The court made findings of fact and rendered judgment for plaintiff against the bank for the full amount of the certificate and interest, and denied the intervener any relief. The defendant and the intervener have appealed.

The findings of fact tell the story of the controversy. These findings and the court's conclusions of law are as follows:

FINDINGS OF FACT

"1. That J. W. Burtrum and Nellie M. Burtrum were married in the year 1897.

"2. That on the date of their marriage both parties owned a small amount of personal property, and thereafter the husband, J. W. Burtrum, inherited approximately $800 from his father's estate; that with the exception of the property owned by the parties at the time of the marriage, and the property inherited by J. W. Burtrum from his father's estate, all the property owned by the parties on September 16, 1932, was the joint accumulation of J. W. Burtrum and Nellie M. Burtrum, husband and wife, during the period of their married life.

"3. That on or about the 14th day of September, 1932, Nellie M. Burtrum left the home of J. W. Burtrum, and thereafter and on September 16, 1932, filed an action in the district court of Craig county, Oklahoma, at Vinita, against J. W. Burtrum in which she prayed for a divorce, alimony, division of property and costs; that summons was issued in said action and served upon J. W. Burtrum on September 17, 1932, at about the hour of 11 o'clock a. m.

"4. That prior to the 17th day of September, 1932, J. W. Burtrum had been a customer of and had deposits of money in his own name in the First National Bank of Vinita, Vinita, Oklahoma, the State Bank of Welch, Oklahoma, and the Chetopa State Bank of Chetopa, Kansas.

"5. That on September 16, 1932, J. W. Burtrum had on deposit in his own name in the form of checking accounts and time deposits in the several banks, the sums, as follows:

Chetopa State Bank, Chetopa, Kansas, on time deposit............ $10,400.59
State Bank of Welch, Welch, Oklahoma, on time deposit.......... 6,000.00
State Bank of Welch, Welch, Oklahoma, checking account......... 1,456.00
First National Bank of Vinita, Vinita, Okla., checking account..... 2,911.00

Total ..................................................... $20,767.59

"6. That on the 17th day of September, 1932, J. W. Burtrum went in person to the Chetopa State Bank, at Chetopa, Kansas, and transferred the money he had on deposit in said bank from his own name and caused to be issued by said bank in the name of his son, the plaintiff herein, J. E. Burtrum, a certain certificate of deposit in the principal sum of $10,400.59, which represented all the money he had on deposit in said bank at said time.

"7. That on the 17th day of September, 1932, J. W. Burtrum went in person to the State Bank of Welch, Oklahoma, and transferred all the money he then had on deposit, in both checking account and time deposit in said bank in his own name to that of his son, Harry Burtrum, and caused said bank to issue its certificate of deposit payable to said Harry Burtrum in the sum of $6,000, which transaction represented a transfer of all the funds J. W. Burtrum then had in said bank on deposit in his own name.

"8. That the plaintiff, in said divorce action, employed Carey Caldwell, an attorney at law, of Vinita, Oklahoma, to represent her in the prosecution of said divorce action, and that defendant, J. W. Burtrum, employed one Richard L. Wheatley, an attorney at law of Vinita, Oklahoma, to represent him in the defense of said divorce action, and that thereafter all negotiations for a prop-

erty settlement in said divorce action, as hereinafter referred to, were carried on between the respective attorneys for the parties thereto, and there was no direct communication between J. W. Burtrum and Nellie M. Burtrum during said negotiations.

"9. That during the pendency of the action of the divorce case in the district court at Vinita, Craig county, Oklahoma, Carey Caldwell, as attorney for and acting on behalf of Nellie M. Burtrum, conducted an investigation for the purpose of determining the location, nature and extent of the property owned by J. W. Burtrum and Nellie M. Burtrum, and that as a part of said investigation said J. W. Burtrum, through his attorney, Richard L. Wheatley, gave letters to said Carey Caldwell directed to the banks at Beaver, Oklahoma; Welch, Oklahoma; Vinita, Oklahoma, and Chetopa, Kansas, authorizing said banks to disclose to said attorney, Carey Caldwell, the funds on deposit in the name of and belonging to said J. W. Burtrum.

"10. That pursuant to notice, and on the 11th day of January, 1933, plaintiff took the deposition of one C. G. Whitby, president of the Chetopa State Bank, at Chetopa, Kansas, in which said deposition inquiry was made as to whether or not J. W. Burtrum had on deposit any money in said bank, and that said C. G. Whitby, president of said bank, testified in substance, that J. W. Burtrum had been a depositor of said bank from October 9, 1922, to June 8, 1931, and that defendant, J. W. Burtrum at one time had money in said bank on time deposit, which certificate was renewed from time to time; that it was last renewed on June 8, 1932, for the sum of $2,250.59, for six months, and that this certificate was paid on September 17, 1932; that said C. G. Whitby had searched the records for time deposits and did not find any other certificates of deposit of J. W. Burtrum, and had no personal recollection of defendant, J. W. Burtrum, having any other money on time deposit in said bank.

"11. That on the 11th day of January, 1933, the intervener, J. W. Burtrum, and his son, J. E. Burtrum, the plaintiff herein, left their home in an automobile on their way to Welch, Oklahoma, and stopped at a mailbox, about one mile distant from the home of J. W. Burtrum, at which time and place J. W. Burtrum received a letter from his attorney, Richard L. Wheatley, advising him that a deposition was to be taken at the Bank at Chetopa, Kansas, that afternoon, and requesting his presence at said time and place; that said J. W. Burtrum responded to said request and went to Chetopa, Kansas, on the date of the taking of said deposition, but was not personally present in the room at the time the deposition was actually taken; that at the taking of said deposition, J. W. Burtrum was represented in the taking thereof by his attorney, Richard L. Wheatley.

"12. That on January 11, 1933, and immediately after having received and read the aforesaid letter from his attorney, Richard L. Wheatley, and at a time before said deposition was taken, J. W. Burtrum made a statement to his son, J. E. Burtrum, the plaintiff herein, in substance that he had about $10,000 on deposit in the Chetopa State Bank in the name of J. E. Burtrum, the plaintiff herein, and further stated, in substance, that 'I am giving this money to you to give you a start in life.' And further said on the same date on their return from Chetopa, Kansas, 'I have the certificate of deposit and will keep it for you,' and that on the evening of the same date, and after having re-

turned from Chetopa, where said deposition was taken, J. W. Burtrum made a statement in substance to Mrs. Zella Burtrum, the wife of plaintiff, J. E. Burtrum, that she was better off than she thought she was, and that he, J. W. Burtrum, had given to them, J. E. Burtrum and wife, the sum of $10,000.

"13. That at all the times subsequent to September 17, 1932, up to and including the date of the property settlement in the divorce case, at Vinita, Oklahoma, J. W. Burtrum knew the exact amount of money on deposit in the Chetopa State Bank, and the fact that said deposit was evidenced by a certificate of deposit payable to J. E. Burtrum; that upon the date of the taking of the deposition of C. G. Whitby, president of said bank, on January 11, 1933, Richard L. Wheatley, the attorney for J. W. Burtrum, knew that there was on deposit in said bank the sum of $10,400.59, and that same was evidenced by a certificate of deposit payable to plaintiff, J. E. Burtrum; that the divorce case between Nellie Burtrum and J. W. Burtrum was tried in the district court of Craig county, Oklahoma, at Vinita, Oklahoma, on January 13, 1933; that for some time prior to that date there had been some discussion of a property settlement between the respective attorneys for the parties, Carey Caldwell and Richard L. Wheatley, and that on January 13, 1933, and shortly before the trial of said cause, final negotiations were had and a property settlement was made as between the parties in the divorce action by the terms of which said settlement it was agreed that plaintiff in the case, Nellie M. Burtrum, should receive the sum of $8,500 in cash and 160 acres of land in Beaver county, Oklahome, and that the defendant should receive 400 acres of land in Craig county, Oklahoma, and all the remainder of the personal property, which said property settlement between the parties was confirmed and approved upon the trial of said case by the district court of Craig county, Oklahoma, and made a part of its judgment in said cause.

"14. That thereafter, and subsequent to the trial of said divorce case, J. W. Burtrum endorsed the certificate of deposit theretofore issued by the Chetopa State Bank in the name of J. E. Burtrum in the principal sum of $10,400.59 by writing on the back of said certificate the words, 'Pay to the order of J. W. Burtrum,' and then signed the name 'J. E. Burtrum,' and then further signed his own name, 'J. W. Burtrum,' and on the 28th day of January, 1933, presented said certificate to the Chetopa State Bank and caused said certificate to be canceled, and in lieu thereof a new certificate issued in a like amount payable to himself, J. W. Burtrum, and said moneys are now on deposit in said Chetopa State Bank, evidenced by said certificate; that thereafter, and in August of 1933, the plaintiff, J. E. Burtrum, made a demand upon the Chetopa State Bank for the payment of the aforesaid funds to him, which said demand was refused; that thereafter, and upon the 6th day of March, 1934, this action was instituted by J. E. Burtrum, plaintiff, against the Chetopa State Bank, as defendant, and thereafter said bank filed its answer in which it admitted that it had and held possession of the sum of $10,400.59; that the ownership of same was in dispute and that said fund was claimed by both J. W. Burtrum and J. E. Burtrum, and that said bank was holding said money subject to the order and decision of this court, and will pay and deliver said money as directed by this court, and prays a discharge with judgment for costs.

"15. That the plaintiff, J. E. Burtrum, did not at any time authorize the intervener, J. W. Burtrum, to endorse the name of 'J. E. Burtrum' on the back of the certificate of deposit, which was issued in his name, by the Chetopa State Bank, on September 17, 1932, in the principal sum of $10,400.59, or to deliver same to the said Chetopa State Bank, and that the endorsement of the name 'J. E. Burtrum' on the back of said certificate of deposit and the delivery of same without authority so to do, was ineffectual to transfer the title from plaintiff, J. E. Burtrum, to intervener, J. W. Burtrum.

"16. That while J. W. Burtrum actually transferred the record title to the money in controversy in this case on September 17, 1932, from his own name to that of J. E. Burtrum, as evidenced by said certificate of deposit, and thereafter, and on the 11th day of January, 1933, J. W. Burtrum stated to plaintiff, J. E. Burtrum, in substance, that he was making to him a gift of said property, and that he would retain possession of the certificate for J. E. Burtrum, the court finds that at said time there was no intent on the part of J. W. Burtrum to make a gift of said money or the certificate evidencing ownership of the same to the plaintiff, J. E. Burtrum.

"17. The court finds that the transfer of the record title of said funds from the name of J. W. Burtrum to J. E. Burtrum, on September 17, 1932, the statement of J. W. Burtrum to J. E. Burtrum, on January 11, 1933, in substance, and to the effect that he was making a gift of said money to said J. E. Burtrum, and that he would hold and care for the certificate of deposit for J. E. Burtrum; that the endorsement and delivery of the certificate of deposit payable to J. E. Burtrum by said J. W. Burtrum, and without authority from J. E. Burtrum, attempting to thereby convert the record title of said money from the name of J. E. Burtrum back into the name of J. W. Burtrum was as to each separate act on the part of J. W. Burtrum, a part of a scheme and plan, on the part of J. W. Burtrum, to conceal from his wife, Nellie M. Burtrum, the nature, the extent and the location of his property interest, for the purpose of cheating and defrauding said Nellie M. Burtrum in the property settlement thereafter entered into between the parties and approved by the district court of Craig county at Vinita, Oklahoma, on January 13, 1933.

"18. That the plaintiff, J. E. Burtrum, did not know of and did not participate in the plan and scheme of J. W. Burtrum to defraud his wife, Nellie M. Burtrum, in the property settlement in the divorce case.

"19. That had Nellie M. Burtrum known of the fact that there was on deposit in the Chetopa State Bank, on January 13, 1933, the sum of $10,400.59, which said J. W. Burtrum claimed as his own property, she would not have agreed to the property settlement entered into between the parties on January 13, 1933; that the concealment of said funds by said J. W. Burtrum, by the transfer of the record title of same from his own name to that of his son, J. E. Burtrum, constituted a transfer of title with the intent, on the part of J. W. Burtrum, and for the purpose of defrauding said Nellie M. Burtrum, in the property settlement in said divorce case; that by reason of the acts aforesaid, said J. W. Burtrum was enabled to and did defraud his wife, Nellie M. Burtrum, in said property settlement.

"Wherefore, the court concludes, as a matter of law, that the intervener, J. W. Burtrum, not having come into court with clean hands, all as shown by the above and foregoing findings of fact, that said intervener, J. W. Burtrum, is not entitled to the relief as prayed for in his petition, and that the plaintiff, J. E. Burtrum, should be decreed to be the sole, separate and absolute owner of the funds now deposited in the Chetopa State Bank of Chetopa, Kansas, in the sum of $10,400.59, together with accumulated interest, and that said bank should be directed to forthwith pay the aforesaid funds to plaintiff, J. E. Burtrum, and that intervener, J. W. Burtrum, pay the costs of this action."

Appellants contend the court erred in overruling the intervener's motion to strike from plaintiff's answer to the intervening petition allegations to the effect that the intervener placed the certificate in plaintiff's name and gave it to him for the purpose of defrauding intervener's wife in the divorce action. The soundness of the ruling depends on whether the facts pleaded constitute a defense to the intervening petition. It is well-settled law that where property is transferred with a fraudulent purpose the grantor cannot recover it from the party to whom he transferred it. (*Robinson's Executors v. Blood's Heirs,* 64 Kan. 290, 67 Pac. 842; *Wyatt v. Collins,* 105 Kan. 182, 180 Pac. 789, 105 Kan. 189, 180 Pac. 992.) Plaintiff could plead facts which constitute a defense to the intervening petition.

Appellants argue even if the intervener has practiced fraud on his wife in the divorce action plaintiff cannot take advantage of it. The intervener placed the certificate in plaintiff's name, thereby giving him title to it, and that is where the title stays unless he can get it back, which his fraudulent purpose in making the transfer prohibits him from doing. Having shown no authority to endorse plaintiff's name to the certificate appellants now contend—although it seems this contention was not made in the trial court—that the name of the plaintiff in the certificate was a "fictitious" name within the meaning of R. S. 52-209, hence that it needed no endorsement by plaintiff, and the intervener, having possession of it, could rightfully endorse it and receive payment. There are three answers to this argument: (1) Plaintiff was not a fictitious person, either in fact, or under the evidence, or under the court's findings, or under the authorities cited by appellant; (2) the intervener, under the evidence or the court's findings, was a holder of the certificate for the plaintiff and was not holding it for himself, and (3) the point was never raised or passed upon by the trial court.

The appellant, J. W. Burtrum, contends the court erred in overruling his motion for a jury trial. He got into this case by permission of the court to file an intervening petition. The remedy by interpleader is an equitable one, and the interpleader is not entitled to a jury as a matter of right. (*Bennett v. Wolverton*, 24 Kan. 284; *Robertson v. Robertson*, 100 Kan. 133, 136, 163 Pac. 655.) More than that, no jury question was raised by the pleadings. The question of the amount of recovery was not in dispute. The issues were the alleged frauds of the intervener and the effect thereof.

The findings are fully sustained by the evidence. We find no error in the record. The judgment of the trial court is affirmed.